JAMES McGEE *et al.*

*v.*

MELISSA A. McGEE *et al.*

1. DOWER—*may be barred by provision in nature of jointure.* Any reasonable provision, whether secured out of realty or personalty, which an adult person, previous to marriage, agrees to accept in lieu of dower, will be a good jointure, in equity, and operate as a bar to any subsequent claim to dower.

2.  SAME—*ante-nuptial contract, as barring dower.*  Where parties in contemplation of marriage entered into an ante-nuptial agreement in 1857, in which it was recited that both were then the owners of real and personal property, and that the intended wife, as an heir, would be entitled to other property, real, personal and mixed, and which then provided that each should retain and possess all his or her property, real, personal and mixed, in possession and expectancy, forever, absolutely free from the claim, right and control of the other, as fully as if such marriage had never taken place, and renouncing forever all claims in law and in equity of curtesy, dower, survivorship or otherwise, in and to all lands, etc., that then or might thereafter belong to or be acquired by the other, which was kept and observed by the parties after their marriage, it was *held*, that the contract was a reasonable one, and not prohibited by public policy, and was such as a court of equity would enforce, and compel the survivor to abide by and perform, and that on the death of the husband it might be set up as a bar to the widow's claim of dower.

3.  HOMESTEAD—*extends to widow and children.*  The policy of the law in relation to homesteads is to preserve the same for the benefit of the family as well as to the householder himself, and not to allow the same to be defeated by any ante-nuptial contract by the father and mother, so as to deprive their minor children of its benefits in case of the death of either.

4.  SAME—*on partition, in favor of minor children.*  On a proceeding for partition by the heirs of a deceased owner of lands, his widow is entitled to have a homestead set off to her, to the extent in value of $1000, for the benefit of herself and the minor children, notwithstanding she may have relinquished forever all claims upon the estate of her husband by an ante-nuptial agreement.  The provisions of the statute can not be defeated by mere private contract between persons not alone within its protection.

5.  HUSBAND AND WIFE—*which bound to support children.*  The wife is not bound, in the first instance, to apply her separate estate to the support of the children of the marriage.  That obligation, primarily, is cast upon the husband's estate.

APPEAL from the Circuit Court of Macoupin county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. JOHN M. & JOHN MAYO PALMER, for the appellants.

Mr. JOHN I. RINAKER, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a bill in chancery, brought by the heirs of David McGee, deceased, for partition of the lands of which he died

seized. An ante-nuptial agreement between the decedent and his surviving widow is set forth in bar of all interest of the widow in the lands of her husband. Answering the bill, the widow claims homestead as well as dower in the lands of which her husband died seized, and all the questions made have relation to the claim put forth.

The ante-nuptial agreement recites, that the parties executing it are about to enter into a contract of marriage, and that both of them are owners of certain real and personal property, and then provides each shall retain and possess all of his or her property, real, personal and mixed, in possession and in expectancy, absolutely forever free from the claim, right and control of the other, notwithstanding such marriage, as fully and completely as if such marriage had never taken place; and in consideration of the premises, the parties respectively covenanted and agreed to and with each other, and for their heirs and assigns, that they did then and forever absolutely and fully renounce all claims, whether in law or equity, of curtesy, dower, survivorship, or otherwise, in and to all lands, tenements, goods, chattels, moneys, choses in action, or other property, that then or might thereafter belong to or be in any manner acquired by the other. The agreement bears date the 20th day of August, 1857, and in the same month the parties were married, and thereafter lived together as husband and wife, until the death of the husband, which occurred in 1875. Two children were born unto the parties, both of whom are now minors, and reside with their mother in the dwelling house where their father had resided. Each of the parents "owned and managed their separate property" during the entire period of their married life.

The facts out of which the questions made arise, are fully stated, and admit of no disagreement. Two propositions are discussed: First, whether the surviving widow is entitled to dower in the lands of her late husband; and, second, whether she is entitled to homestead.

It is conceded the provision made in the ante-nuptial agree-

ment does not create a jointure in favor of the wife, within the meaning of our statute on that subject. That provides, that when an estate in land shall be conveyed to an intended husband or wife, for the purpose of creating a jointure in favor of either of them, with his or her assent, to be taken in lieu of dower, such jointure shall bar any right or claim of dower by the party jointured, in the lands of the other. None of the elements of a statutory jointure are to be found in the provision made for the intended wife by the ante-nuptial agreement; but may not that provision be in the nature of jointure, and may it not, for that reason, bar the dower of the demandant? Although the cases on this subject are not entirely harmonious, the weight of authority seems to be that any reasonable provision which an adult person agrees to accept in lieu of dower will amount to an equitable jointure, and although it may be wanting in the requisites of a legal jointure, in equity it will bar dower.

This is not an entirely new question in this court. In *Jordan* v. *Clark*, 81 Ill. 465, it was agreed between the parties, by an ante-nuptial contract, that in the event the marriage should be consummated, and in case the wife should survive the husband, she should receive out of his estate the sum of $2000, in lieu of dower therein, and it was held, that while the provision made for the wife was not a statutory jointure, nevertheless it was in the nature of jointure, and would bar dower in her husband's estate. The case was decided on another question made; but the same rulings have been made by other courts in cases bearing a strong resemblance to the one at bar, and the precise principle announced as in *Jordan* v. *Clark*, that any reasonable provision, whether secured out of realty or personalty, which an adult person, previous to his or her marriage, accepts in lieu of dower, will be a good jointure in equity. Analogous cases, both as to facts and principles discussed, are *Andrews* v. *Andrews*, 8 Conn. 79; *Heald's Petition*, 2 Foster (N. H.) 265; *Gezer* v. *Gezer*, 1 Bailey Eq. (S. C.) 387; *Logan* v. *Phillips*, 18 Mo. 22. Illustrative of

the same view of the law are *Fendley* v. *Fendley,* 1 Gratt. 434; *Ellenmaker* v. *Ellenmaker,* 4 Watts, 89; *Stilley* v. *Folger,* 14 Ohio, 610; *Murphy* v. *Murphy,* 12 Ohio St. 407; *Cauley* v. *Lawson,* 5 Jones' Eq. 132.

Another point made is, the husband parted with nothing that had belonged to him which the intended wife could accept in lieu of dower, and for that reason it is said she ought not to be barred from claiming dower in the lands of her husband, as given by statute, either in law or equity. The objection rests upon a misapprehension of the legal effect of the contract. It will be remembered the agreement was made in 1857, in contemplation of a marriage soon to take place between the contracting parties, and ancillary to that event. In the agreement it was recited that both parties were then the owners of " real and personal property," and that the intended wife, as heir of Horace Lender, would be entitled to other "property, real, personal and mixed." As the law then was, the husband, on the consummation of the marriage, would succeed to the absolute ownership of the personal property of the wife, and would also be entitled to curtesy in his wife's real estate, as well as the usufruct thereof. Thus, it is seen the husband relinquished all the right which, by the marriage, he might have acquired over the estates of his wife, and in consideration of his agreements she also released all rights in the estate of her intended husband which the law would cast upon her in consequence of the marriage. It is conceded the husband, during his lifetime, abided by his part of the agreement, and that each of them "owned and managed their separate property."

The contract, in our judgment, is a reasonable one. It is one that persons advanced in life could, with great propriety, make, and especially where the parties have previously been married, and where there may be children by both marriages, among whom controversies as to property may arise after the death of the parents. Such agreements are forbidden by no considerations of public policy, and there can be no reason

why equity will not lend its aid to compel the surviving party to abide the contract. Our opinion is, the fair construction of the ante-nuptial agreement is, that it intercepts dower of the widow, and may be set up as an effectual bar to her demand for dower in the lands of which her husband died seized.

The question made as to homestead for the widow and her family residing with her where the husband resided, is one not depending on authority for its solution. It rests more on the construction of our statutes, and on the principles underlying the policy of our laws on that subject. Homestead is a right secured by statute to every householder having a family, and by a recent statute it is an estate in the lot or land owned or occupied by such party. It is continued, after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, and of the children until the youngest child becomes twenty-one years of age. The exemption is absolute, except it is alienated in the mode prescribed in the statute, and no release of homestead is valid unless by the parties intended to be benefited, in conformity with the law that confers power to alienate it at all. The policy of the law is, as this court has had frequent occasion to declare, to preserve the homestead for the benefit of the family, as well as the householder himself. The statute was no doubt enacted from motives of public concern, and it is apprehended it is not in the power of the father and mother, by an ante-nuptial agreement, to so provide as to deprive their minor children of its benefits in case of their death.

It would seem to follow, therefore, that the children of the parties, no matter what construction shall be given to the ante-nuptial contract, during their minority, are entitled to the benefit of their father's homestead; and how can it be preserved to them unless it is set apart to their mother, as their natural guardian? Should the construction contended for be adopted, it would deprive the children of the decedent of the

benefits which this humane statute was intended to throw around them in their tender years, and it seems to us a proposition wanting in the support of both law and reason that they can be deprived of such right by an ante-nuptial agreement between their parents, however comprehensive in its terms. It does not militate against this view of the law that the widow may have sufficient means, derived from her separate estate, with which to support her minor children. She is not bound, in the first instance, to apply her separate estate to the support of her husband's children. The law has cast that obligation primarily upon the husband's estate. The policy of the law is, to provide a home for the family, that they may be kept together, and the mother is not obligated by her antenuptial agreement to abandon her children, but may share with them the homestead which their father in his lifetime had provided, so long as the youngest child is under twenty-one years of age. As in *Phelps* v. *Phelps*, 72 Ill. 545, the antenuptial contract may debar the widow of dower in her husband's lands, but it does not prevent her from sharing in the provisions the law has made for the benefit of the family. It is a matter of public concern, and the beneficent provisions of the statute for the protection of the family can not be abrogated by mere private contract between parties not alone within its provisions.

The decree will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*