GEORGE W. McMAHILL *et al.*

*v.*

MARGARET A. McMAHILL.

*Filed at Ottawa March 28, 1883.*

1. HOMESTEAD—*how extinguished or lost.* There are only two modes by which the homestead right or estate may be extinguished: First, by a release, waiver or conveyance in writing, subscribed by the householder and his wife, or her husband, if he or she has one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged; or, second, by conveyance of the premises, with abandonment or giving up of possession.

2. SAME—*can not be released by ante-nuptial contract.* A widow's homestead right can not be barred by an ante-nuptial contract to that effect. Such contract may bar dower, but not the right to the homestead, even though the widow may not have any issue of the marriage. The provision securing a homestead being a matter of public concern, can not be abrogated by private contract.

APPEAL from the Circuit Court of Warren county; the Hon. JOHN J. GLENN, Judge, presiding.

The original bill in this case was brought by the heirs of William McMahill for a partition of the lands of which he died seized, among themselves. The widow of decedent was made defendant, and the bill charged she was not entitled to dower

or homestead in the lands of her late husband, on account of an ante-nuptial agreement. In her answer defendant admits the making of the ante-nuptial contract, but insists it is not obligatory on her because it was so unfair and unreasonable, as, by its terms, she was only to have $1000 "in lieu of dower, homestead, widow's award and share in his estate, of whatever kind or nature, which estate, she alleges, was worth $75,000. Omitting the date and signatures, the following is a copy of the ante-nuptial contract between the parties:

"This indenture, made and entered into by and between Rev. William McMahill, of the one part, and Margaret Kelly of the other part, both of the county of Warren, and State of Illinois, witnesseth: That in consideration of a marriage about to be entered into by and between the said parties, it is agreed that neither party shall, by reason of said marriage, have any right, title or interest in the property of the other during their joint lives, nor afterwards, except that the said Margaret shall live with the said William, with her two children, and be supported by him. William is to instruct said children while they stay with him, as a father, and not charge them anything, nor shall there be any charge for the labor of said children. In case the said Margaret survives the said William, she shall be entitled to $1000 in cash from the estate of the said William McMahill, in lieu of dower, homestead, widow's award and share in his estate, of whatever kind or nature, and no more."

On the final hearing of the cause, the court found the ante-nuptial contract was valid, and binding upon the widow, and that it barred her claim to dower in the estate of her late husband, but did not bar her claim to homestead, under the statute. Complainants bring the case to this court on appeal, and assign errors on the record. No cross-errors are assigned by the widow, whose rights are affected by the decree.

Messrs. Stewarts & Grier, for the appellants:

The controversy arises with reference to the ante-nuptial contract between the deceased and his widow, and involves its validity and construction. The right of the parties to make such a contract has long been settled in the affirmative. 2 Story's Eq. Jur. secs. 1370, 1371; *Phelps* v. *Phelps,* 72 Ill. 545; *Jordan* v. *Clark et al.* 81 id. 465; *McGee et al.* v. *McGee et al.* 91 id. 548.

In construing such contracts they are to be construed liberally "for the purpose they were intended to accomplish." *Phelps* v. *Phelps, supra; Ardis* v. *Printup et al.* 39 Ga. 648.

The court below held it barred the claim of dower, and we contend it bars the right to an estate of homestead. That estate is created, not for the widow alone, but for the benefit of infant children. In this case there was no issue of the marriage, and no minor children to be protected. The statute was never intended to deprive an adult of the power of alienation, or to deal with his or her rights, whether present or prospective.

Mr. H. Chrisman, and Messrs. Porter & Porter, for the appellee:

We admit the parties might have made a valid ante-nuptial contract; but the utmost fairness and good faith are requisite before courts of chancery will enforce the same. The presumption seems to be against their validity, and the burden is upon the husband, or those claiming under him, to prove the perfect fairness of the transaction. *Pierce* v. *Pierce,* 71 N. Y. 154; *Darlington's Appeal,* 27 Am. Rep. 726, (86 Pa. St. 512;) Story's Eq. Jur. 310; *Rockafellow* v. *Newcomb,* 57 Ill. 186.

In this case the provision was utterly unjust and contemptible in comparison with what she was waiving, and, as the proof clearly shows, was entirely ignored by both parties, and the court should have held that the contract, if it ever

had validity, was completely set aside by the acts and decla-
rations of George W. McMahill in his lifetime, with the full
consent of the appellee. *Colehour* v. *Morrill,* 82 Ill. 618.

But even if the court should hold that the appellee was
bound by this unfair agreement, forced upon her upon the
point of marriage, and at a time when she was in the pres-
ence of the magistrate who performed the ceremony, and that
there was not sufficient evidence produced by appellee to set
the contract aside, still it is clear that the court below prop-
erly held that the estate of homestead was not affected by it.
Public policy will not allow parties to waive such an estate in
advance. (Thompson on Homesteads, sec. 447; *Boyd* v. *Cud-
derback,* 31 Ill. 119.) It can only be parted with by the for-
malities prescribed by law. (*Abbott* v. *Cromertie,* 72 N. C. 548;
*Beavin* v. *Speed,* 74 id. 548.) Our statute provides the only
way in which it can be released. Rev. Stat. chap. 52, sec. 4;
*Kingman* v. *Higgins,* 100 Ill. 319; *Black* v. *Lusk,* 69 id. 70.

Mr. Chief Justice Scott delivered the opinion of the Court:

It will be perceived the circuit court found, and so decreed,
that the ante-nuptial agreement between the parties was
valid, and obligatory upon defendant, and was effectual to
cut off or bar her dower in the lands of her late husband, the
ancestor of complainants. Touching that decision defend-
ant has assigned no cross-errors, and, of course, can make
no complaint in this court. The only question, therefore,
that remains to be considered, is, whether the ante-nuptial
contract cut off or barred defendant's claim to homestead in
the premises on which she and her late husband resided, and
which she has not since abandoned. The heirs claiming
the estate are children of the decedent by a former wife.
Defendant had no children after her second marriage. Nor
does it appear that any of her husband's children are minors,
residing with her. The claim put forth is to the right of
homestead, under the statute, in lands on which she and her

husband resided in his lifetime, as his widow, unaffected by any collateral considerations.

Section 1 of the Homestead act,. in force July 1, 1873, secures to every householder having a family an estate of homestead in the farm or lot occupied by him or her, which can only be extinguished in the mode provided in a subsequent section of the act; and section 2 of the same act provides such exemption shall continue after the death of such householder for the benefit of the husband or wife surviving, so long as he or she shall continue to occupy such homestead. Only two modes are provided by which the homestead right or estate may be extinguished: First, by a release, waiver or conveyance in writing, subscribed by such householder and his wife, or her husband, if he or she has one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged; or, second, by conveyance of the premises, with abandonment or giving up of possession. It is further provided in the act concerning conveyances, in force July 1, 1872, that no deed or other instrument shall be *construed* as releasing or waiving the right of homestead, unless the same shall contain a clause expressly releasing or waiving such right, and in such case the certificate of acknowledgment shall contain a clause substantially as follows: "Including the release or waiver of the right of homestead," or other words which shall expressly show that the parties executing the deed or other instrument intended to release such right. These provisions of the statute show that homestead is a right secured to both husband and the wife, and is one of which they can not be dispossessed except by their voluntary action in the mode pointed out by statute. It is protected by the strongest guaranties of the law, and no release or waiver of such right shall be construed as valid unless acknowledged as required by the Conveyance act. After her marriage defendant enjoyed the homestead of her husband, and after his death the law continued it in her favor

so long as she should choose to occupy it. It is obvious she could not contract, after marriage, by any written instrument not executed in conformity with the statute, to release her homestead, that would be binding upon her after the death of her husband. How, then, could she do it before marriage? If a contract to release homestead, not conforming to the statute, made after marriage, is not valid, certainly such a contract made before marriage, for still more cogent reasons, would be without binding obligation. The policy of the law is, as this court has had frequent occasion to declare, to preserve the homestead for the benefit of the party or parties entitled to it. It has been said the statute was enacted from motives of public concern, and that parties will not be permitted, by ante-nuptial agreements, to annul its beneficent provisions designed to subserve the common welfare. In *McGee* v. *McGee*, 91 Ill. 548, it was held the homestead right could not be barred by an ante-nuptial contract. In that case there were children of the parties, but it is apprehended that fact would not change the basis of the decision. The principle is, the statute secures the homestead to the husband or wife surviving, and such right can only be extinguished in the mode provided by the statute. It can not be done by an ante-nuptial agreement, for the simple reason that is not one of the modes provided by statute by which such right may be extinguished. In *Phelps* v. *Phelps*, 72 Ill. 545, it was held the ante-nuptial agreement between the parties barred dower, but did not prevent the widow from sharing in the provisions the law made for the benefit of the family and herself. It was for the reason the provision the law made for her and the family could not be abrogated by private contract. It was thought to be a matter of public concern, for which the legislature could well provide for its permanent security. The case being considered is within the principle of the cases cited, and the decree of the circuit court will be affirmed.

*Decree affirmed.*

Sheldon, Scholfield and Craig, JJ., dissenting:

Ante-nuptial agreements in regard to property rights have received the repeated sanction of this court. (*Phelps* v. *Phelps*, 72 Ill. 545; *Jordan* v. *Clark*, 81 id. 465; *McGee* v. *McGee*, 91 id. 548.) In the case first named, the court admitted that such a contract would have effect to debar the wife of dower in the husband's real estate, and prevent her taking any portion thereof as heir, under the statute, but would not deprive her of her right to the specific articles of personal property allowed by the statute in all cases for the benefit of the widow and family of a deceased person. But this was on the express ground that the latter was a provision which was not for the sole benefit of the widow, but for the benefit of herself and the family, and that she could not be permitted, by an act of hers, to defeat such a provision, which was for the family's benefit as well as her·own. In the last named case the question was made whether such a contract would defeat the homestead right of the widow where there were two minor children, and it was held that it would not,—that the homestead right was not in the widow alone, but also in the minor children during their minority, and in order to their enjoyment of it the widow must have it also, and therefore, the homestead right being for the benefit of the widow and minor children, it would not be cut off by any ante-nuptial contract. The rights claimed by the widow in the above cases were allowed to her against her ante-nuptial contract, because the statutory provisions under which they were claimed were for the benefit of others besides herself, and the rejection of her claim would have been the denial to such others of the benefit of such provisions; and the inference from the reasoning in those cases is, that the decisions would have been different if the widow's own personal interests alone had been concerned. In the present case it is the personal interest of the widow alone which is involved. There are no minor children. It is the widow

alone who can claim a homestead right in the property, and in such a case we think consistency of decision requires that the homestead right of the widow should be held to be barred by the ante-nuptial agreement, as well as the right of dower. This we regard as in consonance with the former decisions of this court respecting such agreements. The statutory provision as to the mode of release of the homestead right we consider as applying only to releases made during the subsistence of the marriage relation between the parties.