# JOHN W. CRUM

## v.

# JOHN S. SAWYER et al.

*Filed at Springfield March 31, 1890.*

1. MARRIED WOMEN—*contracts between husband and wife—and, generally, of the right of married women to make contracts.* The statute of 1874, in relation to husband and wife, has removed the common law disability of married women to contract, or that of husband and wife to contract with each other, except so far as is provided in the act itself. By the present legislation on the subject, married women are placed on the same footing as *femes sòle* in respect to all property rights, including the means to acquire, protect and dispose of the same ; and all restrictions upon the power of husband and wife to contract with each other, except so far as they are expressly retained, are removed.

2. SAME—*contract by the husband to release his contingent interest in his wife's lands.* A husband may, for a valuable and adequate consideration, enter into a contract with his wife to release and relinquish all his right and interest, of every kind and nature, including his contingent right of dower, in all her lands, and his interest as her heir in her lands and personal estate, and such contract, if fairly made, will be binding on him.

3. SAME—*release of husband's dower right in the wife's lands—of the mode of release.* The right of dower, when vested in a husband, is an estate in land, inchoate during the life of his wife and consummate afterward ; and since the statute has in no way restricted his power to convey it, he may release the right, or bar himself of its assertion, in any mode to which the ordinary rules of law would give that effect. It may be admitted that a married woman can release her dower only in the statutory mode, but the statute has imposed no such disabilities on husbands in respect to their dower.

4. SAME—*estoppel by contract—of husband to claim dower in the wife's lands.* Where a husband executed to his wife, upon a valuable consideration, an instrument under seal, by which he released his dower in her lands, and also covenanted with her and her legal representatives not to assert such dower in case he should survive her, it was *held*, that if the release of the dower directly to the wife was ineffectual as a conveyance, his covenant not to assert a claim for dower operated, by way of estoppel, to bar him of the right.

5. HOMESTEAD—*release by husband to the wife—before the right accrues.* A husband can not, by a post-nuptial contract with his wife, bar his right of homestead in her lands before such right has accrued.

6. CONTRACT—*made in ignorance of its legal effect.* The fact that a contract between a husband and wife for the release and relinquish-- ment by each of all interest, present and contingent, in the real and personal estate of the other, may be entered into by the wife in ignor-- ance of the law revoking her will by her marriage, will not authorize either party to have such contract cancelled; but the contract will be enforced precisely as though she knew her will was revoked, or as though no will had ever been made.

7. AN HEIR'S EXPECTANCY—*the subject of contract—by assignment or release—matter of equitable cognizance.* An assignment or release by an heir apparent or presumptive, of his expectancy or contingent in-- terest, if made *bona fide* and for an adequate consideration, will be en-- forced in equity, after the death of the ancestor, not as a trust attaching to the estate, but as right of contract.

8. Courts of equity support assignments, not only of choses in action, but of contingent interests and expectancies, and also of things which have no present, actual or potential existence, but rest in possibility, only. In respect of the latter, the assignment can have no positive operation to transfer *in presenti,* property in things not *in esse,* but op- erates by way of present contract, to take effect and attach to the things assigned when and as soon as they come *in esse.*

9. A husband, in consideration of a sum of money advanced to him by his wife, and her release of all interest in his estate, real and per- sonal, that she might acquire in case of his death leaving her surviving, made a similar release of all his interest in her estate, and covenanted, in case of his surviving her, not to claim or sue for the same: *Held,* that the husband's contingent interest or expectancy as the heir of his wife was the proper subject of contract, and that the contract having been entered into with entire fairness and upon a valuable considera- tion, should, as to such expectancy, be enforced against the husband according to its terms.

10. SAME—*release of an heir's expectancy—inuring to the other heirs.* A relinquishment by an heir to his ancestor of the former's expected inheritance, is, in its nature, a relinquishment in favor of the other heirs, whether they are mentioned in the instrument by which the re- linquishment is made, or not, and after the death of the ancestor such relinquishment will be enforced in their favor.

11. A release by an heir of his expectancy, operates, not as a transfer or conveyance to either the ancestor or the other heirs of the estate which will descend to him upon the death of the ancestor, but rather as an extinguishment of his right to take any interest by descent. The other heirs are thereby placed in the same position in which they would have been if such right had never existed.

12. CONSTRUCTION OF CONTRACT—*the expression of the larger interest, followed by restrictive words.* The rule that when, in a statute or con--

tract, a specific enumeration of specific objects or things is followed by a general expression, such expression will be held to include only such things. as. are of the same kind as those particularly enumerated, has no application when the general and comprehensive expression comes first. When the larger and more general interest is first expressed, it will not be defeated or limited by subsequent expressions more restricted in their application.

13. REVOCATION OF WILL—*of a woman—by her subsequent marriage.* The marriage of a woman will operate as a revocation of a will and codicil made by her previous to the marriage, and she will be presumed, in the absence of proof to the contrary, to have known the legal effect of her marriage on her will. But her ignorance of the law in this respect will not change the rule.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This was a suit in equity, brought by John W. Crum against John S. Sawyer, George O'Rear and Leanah M. Thomas, for partition. The original bill alleged that Frances D. E. Crum, the complainant's wife, in her lifetime and at the time of her death, was seized in fee of certain parcels of land situate in the counties of Cass and Morgan, a portion of said tracts being in the possession of and subject to the life estate of said Leanah M. Thomas, formerly the widow of William O'Rear, deceased, the same having been assigned and set apart to her, as such widow, as and for her dower in and to all of said lands; that said Frances D. E. Crum departed this life intestate August 30, 1888, leaving her surviving as her next of kin and only heirs at law the said George O'Rear and John S. Sawyer, her uncles, and the complainant, her husband; that the personal property left by said intestate was amply sufficient to discharge all claims against her estate; that the complainant and said O'Rear and Sawyer, as the heirs at law of said intestate, were seized in fee of all of said lands, subject to said life estate in said portions thereof, the plaintiff being entitled to an undivided one-half and said O'Rear and Sawyer each to an undivided one-fourth thereof; that no other persons, with the

exception of said Leanah M. Thomas, had any interest in or title to said premises; and the bill therefore prayed for a partition of said lands between the complainant and said O'Rear and Sawyer according to their respective rights and interests therein, subject to the life estate of said Leanah M. Thomas.

After the filing of the original bill, George O'Rear died, and his death being suggested upon the record, an amended bill was filed, substituting his widow and children as defendants, said amended bill alleging, in addition to the matters set forth in the original bill, that the complainant was also entitled to dower and an estate of homestead in said lands of his deceased wife, and praying that one-half of said lands be set off to him as heir, and that his dower and homestead, as surviving husband, be assigned and set off to him in the other half.

The defendants answered admitting the facts as stated in the bill, but denying that the complainant had any beneficial interest whatever in the real estate therein described, and alleging that, by means of the instrument hereinafter set forth, he had released all his interest therein, and estopped and debarred himself from setting up the same as against the defendants, and that he should be charged as trustee for the defendants, and required to convey to them the real estate which descended to him as the heir of his deceased wife.

A general replication to said answers having been filed, the cause was heard on pleadings and proofs, and a decree was thereupon rendered finding that the complainant was not entitled to the relief prayed for, and dismissing his original and amended bills for want of equity. From that decree the complainant has appealed to this court.

It appears from the evidence, that in April, 1876, William O'Rear died testate as to a portion of his personal estate, but intestate as to all his real estate and the residue of his personal estate, and leaving him surviving his widow, Leanah M. O'Rear, now the defendant Leanah M. Thomas, and one daughter, Frances D. Eads, then the widow of Horatio Eads.

Mrs. Eads being the only child, inherited all the intestate estate of her father. The widow of William O'Rear renounced under the will of her husband, and elected to take her distributive share of his personal estate and her dower in his real estate, and a portion of said real estate was thereupon assigned and set off to her as her dower, the same being that portion of the lands in controversy in this suit in which, as is admitted by the pleadings, she has a life estate.

The lands inherited by Mrs. Eads from her father, consisting of the lands in Cass and Morgan counties in controversy here, and some lands in the State of Missouri, were estimated to be worth from $150,000 to $175,000, and she also received from her father's estate a large amount of personal property. She had no children by her former marriage, and was then a confirmed invalid, and had been such from childhood. On the 21st day of March, 1877, which was nearly a year after her father's death, she made a will by which she undertook to dispose of all her estate, and by said will she devised and bequeathed the bulk of her property to trustees therein named, in trust, to found and maintain, in perpetuity, a charitable institution for friendless women, to be called the "Frances D. Eads Home for the Friendless." On the 27th day of May, 1879, being about to be married to the complainant, she executed a codicil to her will, giving pecuniary legacies to certain of her relatives and friends, and among them, to one of the complainant's sons by a former marriage. On the 29th day of May, 1879, Mrs. Eads and the complainant were married, she then being fifty-two years of age and the complainant two years her senior. The complainant had been previously married, and had five sons by his former marriage, most of whom were then adults.

The complainant and wife, after their marriage, resided on a farm belonging to the complainant about ten miles north of Jacksonville until September, 1886, and they then removed to Jacksonville and resided on property owned by Mrs. Crum

until her death, which occurred August 30, 1888. The evidence tends to show that they were strongly attached to each other, and that their conduct towards each other was always kind and affectionate.

On the 24th day of June, 1886, the complainant was the owner of real estate worth about $35,000, but was largely in debt, his lands being incumbered by judgments and otherwise to nearly their entire value. Under these circumstances his wife proposed to furnish and did furnish from her separate estate the money to pay and discharge said indebtedness, the entire amount so advanced being $31,992.86, and thereupon the complainant and his wife executed under their hands and seals the following instrument:

"This agreement, made and entered into this 24th day of June, Anno Domini, 1886, by and between John W. Crum, of Morgan county, Illinois, party of the first part, and Frances D. E. Crum, his wife, party of the second part:

"*Witnesseth*, that whereas, the said party of the second part, at the request of the said party of the first part, and in consideration of the covenants and agreements of the said party of the first part, hereinafter contained, has heretofore, out of her own separate estate and private means, paid and discharged the following indebtedness of said party of the first part, to-wit: Certain notes, with the interest thereon, made by the said party of the first part, as principal, and A. A. Crum, his brother, as surety, to Benjamin F. Beesley and Charles Cox, executors of the last will and testament of William O'Rear, deceased, amounting to the sum of $8175.30; a certain other note made by the said party of the first part to Benjamin F. Beesley, surviving executor of the said William O'Rear, with the interest thereon, amounting altogether to the sum of $1062.98; the balance due on a certain judgment heretofore recovered against the said party of the first part, in the circuit court of Morgan county, Illinois, by Josephus and Jackson Henderson, administrators of the estate of David G. Henderson, deceased,

—the balance so paid on said judgment being the sum of $4426.30; taxes upon the lands of the said party of the first part, amounting to the sum of $177.89; interest upon certain notes made by the said party of the first part to Isaiah Strawn and Charles Strawn, respectively, amounting to $2865.96; and has also covenanted and agreed, and does hereby covenant and agree, to and with the said party of the first part, to pay and discharge two certain notes made by the said party of the first part to Isaiah Strawn and Charles W. Strawn, said notes being for the principal sums of $10,000 and $5000, respectively, together with the interest now accrued thereon, amounting to the sum of $284.43,—the total amount of the sums so paid and agreed to be paid, as above stated, being $31,992.86.

"And the said party of the first part, in consideration of the payments made and to be made for his benefit, as above stated, and in further consideration of the covenants and agreements of the said party of the second part, hereinafter contained, does, by these presents, remise, release and relinquish to the said party of the second part, her heirs, executors, administrators, devisees and assigns, all his right and interest, of every kind and nature whatsoever, and especially his contingent right of dower and homestead, in all lands of which the party of the second part is now seized or of which she may hereafter become seized; and does hereby covenant to and with the said party of the second part, her heirs, executors, administrators, devisees and assigns, that in the event he should survive the said party of the second part, he will not sue for, claim or demand any right of dower or other interest whatsoever in or out of any and all real estate of which the said party of the second part may die seized or to which she may be entitled at the time of her death, either in possession, reversion, remainder or otherwise.

"And for the consideration aforesaid, the said party of the first part does hereby remise, release and relinquish unto the

29—132 ILL.

said party of the second part, her heirs, executors, administrators and legatees, all right, title and claim to any and all distributive share or portion of the personal estate of which the said party of the second part may be possessed or to which she may be entitled, in remainder, reversion or otherwise ; and does hereby covenant and agree to and with the said party of the second part, her heirs, executors, administrators and legatees, that in the event he should survive the said party of the second part, he will not sue for, claim or demand any distributive share or interest whatsoever to which he might be entitled, as surviving husband of the said party of the second part, in or out of any and all personal estate of which the said party of the second part may or shall die possessed or to which she may be entitled at the time of her death, in reversion, remainder or otherwise.

"And the said party of the second part, in consideration of the premises above recited, and the covenants and agreements of the said party of the first part, hereinbefore set forth, does hereby remise, release and relinquish unto the said party of the first part, his heirs, executors, administrators, devisees and assigns, all her right and interest, of every kind and nature whatsoever, and especially her contingent right of dower and homestead, in all lands of which the said party of the first part is now seized or of which he may hereafter become seized ; and does hereby covenant to and with the said party of the first part, his heirs, executors, administrators, devisees and assigns, that in the event she should survive the said party of the first part, she will not sue for, claim or demand any right of dower or other interest whatsoever in or out of any and all real estate of which the said party of the first part may die seized or to which he may be entitled at the time of his death, either in possession, reversion, remainder or otherwise.

"And for the consideration aforesaid, the said part of the second part does hereby remise, release and relinquish unto the said party of the first part, his heirs, executors, adminis-

trators and legatees, all right, title and claim to any and all distributive share or portion of the personal estate of which the said party of the first part may be possessed or to which he may be entitled, in remainder, reversion or otherwise ; and does hereby covenant and agree to and with the said party of the first part, his heirs, executors, administrators and legatees, that in the event she should survive the said party of the first part, she will not sue for, claim or demand any distributive share or interest whatsoever to which she might be entitled, as the surviving wife of the said party of the first part, in or out of any and all personal estate of which the said party of the first part may die possessed or to which he may be entitled at the time of his death, in reversion, remainder or otherwise.

"And the said parties of the first and second parts do further mutually covenant and agree, each with the other, that during their joint lives they and each of them will, at any time, on request, join the other in the execution of any conveyance of any real estate of which he or she may be seized or to which he or she may be entitled, in remainder, reversion or otherwise, and make a formal release and relinquishment of his or her contingent right or interest in the real estate of the other.

"In witness whereof, the said parties have set their hands and seals to this and another instrument of like tenor and date, on the day and year first above written.

J. W. CRUM,   [Seal.]

F. D. E. CRUM. [Seal.]"

"STATE OF ILLINOIS,  ⎰ *ss.*
   *Morgan County*,  ⎱

"I, B. F. Beesley, a notary public in and for the county and State aforesaid, do hereby certify that John W. Crum and Frances D. E. Crum, who are personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed, sealed and delivered said in-

strument as their free and voluntary act, for the uses and purposes therein set forth.

"Given under my hand and notarial seal, this 24th day of June, A. D. 1886.                    B. F. BEESLEY, *Notary Public.*"

The foregoing contract was executed in duplicate, one of the duplicate instruments being delivered to the complainant and the other to his wife. Mrs. Crum had a private box in a bank vault to which she alone had access. After her death the key to said box could not be found, but the box being opened by a lock-smith, said will and contract were found deposited therein together, said instruments being the only contents of the box. All further facts necessary to a proper understanding of the case will be found stated in the opinion of the court.

Mr. JOHN M. PALMER, Mr. HENRY S. GREENE, and Mr. JOHN A. BELLATI, for the appellant:

The law casts the estate on the heir without any act on his part, and he can not disclaim it if he would. 2 Blackstone's Com. 201; 2 Washburn on Real Prop. 399; *Lyson* v. *Postlethwaite,* 13 Ill. 731; *Marvin* v. *Collins,* 98 id. 510.

Where there is a particular recital and general words, the general words are restricted to the particular recital. *Denn* v. *Wilford,* 8 D. & R. 549; *Jackson* v. *Stevens,* 16 Johns. 110; *Jackson* v. *Stackhouse,* 1 Cow. 122; Bishop on Contracts, sec. 593; *Shirk* v. *People,* 121 Ill. 61; *People* v. *Railroad Co.* 119 id. 83; Potter's Dwarris, 247, 248.

General words are limited always to that thing or those things which were specially in contemplation of the parties at the time when the release was given. Pollock's Principles of Contract, 436, 442; *Railway Co.* v. *Blackmore,* L. R. 4 H. T. 623; *Lindo* v. *Lindo,* 1 Beav. 496; *Browning* v. *Wright,* 2 B. & P. 13; *Hesse* v. *Stevenson,* 3 id. 565.

A sweeping clause following a particular recital is restricted to things of a like nature to the thing particularly recited.

*Brooke* v. *Kensington,* 2 K. & J. 771 ; *Moore* v. *Magrath,* 1 Cowp. 9 ; *Nind* v. *Marshall,* 3 J. B. Moore, 703 ; *Sandiman* v. *Breach,* 7 B. & C. 96.

An heir apparent has no interest that he can release. Coke's Litt. 265 ; *Davis* v. *Hayden,* 9 Mass. 514; 2 Washburn on Real Prop. (2d ed.) 636.

No title not *in esse* will pass by a deed unless the deed has covenants of warranty, and then it passes by way of estoppel. *Jackson* v. *Wright,* 14 Johns. 193 ; 2 Washburn on Real Prop. 471.

There was no sufficient release of either the dower or the homestead rights.

Messrs. MORRISON & WHITLOCK, and Messrs. BROWN & KIRBY, for the appellees :

The parties had the legal power to enter into the post-nuptial contract. *Hogan* v. *Hogan,* 89 Ill. 427 ; *Thomas* v. *Mueller,* 106 id. 42.

Post-nuptial contracts, wholly or partly executed, will be sustained. *Kesner* v. *Trigg,* 95 U. S. 54 ; *Gordon* v. *Tucker's Heirs,* 6 Munf. 1 ; *Livingston* v. *Livingston,* 2 Johns. Ch. 537 ; *Bullard* v. *Briggs,* 7 Pick. 533 ; *Dale* v. *Lincoln,* 62 Ill. 22.

The rule of construction that general words following particular words are restricted, has no application. The larger intent will prevail. *Binger* v. *Cann,* 3 M. & W. 342.

Mr. Crum had only a contingent interest—an expectancy ; and his agreement was a contract to assign it—to convey it when the contingency happened—that is, when the title vested by the death of the wife. 2 Story's Eq. Jur. sec. 1040, and cases there cited.

It was not a trust attaching to the estate, but a contract to convey the title when received, and this is such a contract as equity will enforce. Equity will lend its aid at the instance of a person who claims through one who was within the influence of the marriage settlement, though he himself should not

be within it. In all cases when the party seeking the aid of the court, either comes himself within the influence of the marriage consideration, or claims through one who did, the court will enforce a specific performance, and it will do so against the settler himself, against his real and personal representatives, and against those claiming under him as volunteers. Atherley on Marriage Settlements, sec. 127; *Nevis* v. *Scott,* 9 How. 98; 2 Perry on Wills,.190; *Beckerly* v. *Newland,* id. 182; *Trull* v. *Eastman,* 3 Metc. 1.

This is not a new doctrine in this court. *Parsons* v. *Ely,* 45 Ill. 232; *Bishop* v. *Davenport,* 58 id. 105; *Kershaw* v. *Kershaw,* 103 id. 307; *Galbraith* v. *McLain,* 84 id. 379; *Simpson* v. *Simpson,* 114 id. 603.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The decision of this case must necessarily depend upon the legal effect to be given to the contract between the complainant and his wife recited at length in the foregoing statement. It does not seem to be claimed by counsel that, at the time said instrument was executed, these parties had not the legal capacity to enter into valid and binding contracts with each other. Indeed, the terms of our present statute are such as to leave little room for such contention. Whatever may have been the common law disability of married women to contract, or of husband and wife to contract with each other, such disabilities would seem to be removed by the act of 1874 in relation to husband and wife. That act provides that, with certain exceptions and subject to certain limitations particularly pointed out, "Contracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried." In *Snell* v. *Snell,* 123 Ill. 403, in commenting upon this and certain former statutes, we said: "By these acts married women are to-day placed upon the same footing with married men in respect to all property rights, including the means to acquire, protect

and dispose of the same. They may own, buy, sell, transfer and convey any and all kinds of property, to the same extent as married men or single women may, and subject to no other or different conditions or restrictions."

In *Hamilton* v. *Hamilton*, 89 Ill. 349, we were called upon to give construction to this statute, as applied to contracts entered into directly between husband and wife, and after referring, among other provisions, to the one above quoted, we said: "There is nothing in all this which forbids her to contract with her husband, and the words are general and broad enough to sanction such contracts. Not only so, but it is provided in section 9 of the act, that where husband and wife shall be living together, no transfer of goods between them shall be valid as against the rights of third persons, unless in writing, duly acknowledged and recorded. This provision necessarily implies that the former broad language of the statute was used in a sense to authorize contracts between husband and wife, and make them effective in all cases for lawful purposes, except in so far as otherwise provided by the act itself. We find nothing in the act limiting her capacity to contract in this regard." So, in *Thomas* v. *Mueller*, 106 Ill. 36, we held that, under existing legislation, all restrictions upon the power of husband and wife to contract with each other, except so far as they are expressly retained, are removed.

Assuming then the general capacity of the complainant and wife to contract with each other, the questions presented by the record involve, first, an inquiry as to the proper construction of said contract so as to give effect to the intention of the parties as therein expressed, and, second, whether any of the provisions of the contract, either by reason of their subject matter or the mode of execution, must be held to be inoperative.

Said contract was based upon a valuable consideration, and there can be no doubt we think that said consideration was adequate. On the part of Mrs. Crum it consisted of the advancement and payment in money out of her separate estate

in satisfaction of her husband's indebtedness, of the sum of $31,992.80, and the relinquishment of her dower and homestead in her husband's lands, and of her distributive share of his personal estate, and her covenant not to claim, demand or sue for any of the rights thus relinquished in case she should survive her husband. Said consideration, so far as it involved the advancement and payment of said sum of money, was fully executed. For this consideration the complainant released and relinquished all the interests which he would be entitled to claim in the real and personal estate of his wife in case he should survive her, and covenanted not to sue for, claim or demand any of said rights. With the exception of an inchoate right of dower, the subject matter of his release was not a vested right or interest, but a mere expectancy or possibility, which can scarcely be said to have had at the time any fixed pecuniary value. Mrs. Crum, it is true, has no children or descendants, and had reached that period of life when it was not probable that she would have. Under these circumstances her husband was the heir presumptive if not the heir apparent to one-half of her real estate and all her personal estate remaining after the payment of claims. But whether this mere possibility would ever become a vested interest was wholly uncertain. She had the undoubted power, during her lifetime, to dispose of her personal estate as she pleased, and she could also, subject to his dower, and homestead rights, if such should be acquired, dispose of her real estate. Furthermore, it was altogether uncertain whether he would survive her, and if he had died first, none of the interests which he undertook to relinquish would have become vested, or have ever possessed any value. It is true that one-half of the real estate of which she in fact died seized and her personal estate not required for the payment of claims were worth, at the time of her death, much more than the sum of money advanced by her. But this by no means proves that, at the time the contract was executed, the money advanced by Mrs. Crum and the covenants on her

part, were not a sufficient and adequate present consideration for the relinquishment of mere possibilities which might never ripen into vested interests.

But the rule is well settled that mere inadequacy of consideration, unaccompanied by other inequitable incidents, unless so gross as to show fraud, is never a sufficient ground for cancelling either an executed or executory contract, or to defeat the specific performance of an executory contract. 2 Pomeroy's Eq. Juris. sec. 926. Furthermore, the sufficiency of the consideration of the contract in this case is not attacked by any pleading. The bill makes no mention of it, and of course does not attempt to state a case which would entitle the complainant to relief against it. It must then be held that, so far as the validity of said instrument is affected by the question of consideration, it must be held to be valid and binding upon the complainant.

Mrs. Crum's will and the codicil thereto having both been executed prior to her marriage with the complainant, were, by force of such marriage, revoked and annulled. R. S. 1874, chap. 39, sec. 10; *Duryea* v. *Duryea,* 85 Ill. 41. That this is so is not questioned by counsel for the complainant. But they seek to argue from some expressions in the contract, from the fact that the contract and will were found together in the private depository where Mrs. Crum kept her most valuable papers, and from some other circumstances appearing in evidence, that Mrs. Crum was ignorant of the fact that her will had been revoked by her marriage, and that the will and contract were intended by her as parts of a scheme by which she undertook to devote the bulk of her property after her death to the foundation and maintenance of a charity which should bear and perpetuate her name. The conclusion sought to be drawn from these assumptions, if we understand it correctly, is, that as said scheme has wholly failed by reason of the revocation of the will, the contract which counsel suppose was entered into and designed merely as a part of and in further-

ance of said scheme, should be held to have totally failed of its purpose, and for that reason should not be enforced.

To this theory there seem to us to be grave and indeed unanswerable objections. First and foremost stands the legal presumption that Mrs. Crum, at the time she entered into said contract, knew the rules of law, and therefore knew that her will had been revoked by her marriage and was no longer in force. But apart from such legal presumption, there is no evidence which is at all clear or convincing, that she was not actually aware of the invalidity of her will. One of the circumstances to which we are referred as tending to show that she probably acted upon the impression that her will was still in force is, that in her contract she mentioned her devisees and legatees. But so far as we can see, that circumstance is quite as consistent with the supposition that she then intended and expected to make another will as that she was relying upon the belief that her former will remained unrevoked. Another circumstance to which we are referred is the finding, after her death, of the will and contract together in her private box in the bank vault, where she would be likely to keep her most valuable papers. But the evidence fails to show when she deposited them there, and the will therefore may have been placed there before her marriage. If so, there is nothing remarkable in her failure to subsequently remove or destroy it. The fact that the two papers were found together in the box, in the absence of any circumstance giving it special significance, may be accounted for on a variety of hypotheses other than that of supposing that she regarded the will as still valid when she executed the contract.

Perhaps the most suggestive circumstance shown in support of the theory of the complainant's counsel is the execution by Mrs. Crum, two days before her marriage, and probably in contemplation of that event, of a codicil to her will, in which she made, among other bequests, one in favor of a son of her intended husband. It is very likely that when she executed

the codicil, she was not aware that her marriage which was so soon to take place, would revoke both that and the will, but her ignorance at that time of the legal effect of her marriage can hardly support a presumption that she was equally ignorant of it at the time of the execution of the contract, which was more than seven years later.

Some other facts appearing in evidence are referred to in this connection, but without considering them more in detail, it may be said that the circumstances shown do not, either separately or combined, amount to anything which can be accepted as proof that Mrs. Crum executed said contract upon the mistaken belief that her will remained unrevoked. But if it should be admitted that such was in fact her supposition, we are unable to see that the case would be in the least degree affected thereby. If she was acting under a mistake, it was purely a mistake of law, and against the consequences of such mistakes the law ordinarily affords no relief. She, if she had lived, could not have obtained a cancellation of the contract on that ground, nor can the complainant who seeks to come in as her heir and legal representative. So far as we can see, the contract must be interpreted and enforced precisely as though, at the time she executed it, Mrs. Crum in fact knew that her will had been revoked, or as though no such will had ever existed.

But it is contended that said contract, by reason of its subject matter or the mode of its execution, is not enforceable against the complainant. On the 24th day of June, 1886, the date of the contract, the complainant had, under the statute, an inchoate right of dower in the real estate of which his wife was then seized, and he had also an expectancy, as her heir, of taking by descent, the fee in an undivided one-half of the lands of which she should die seized, and to be entitled by way of distribution to all of her personal estate which should remain after the payment of claims. His dower was then a vested though imperfect right, but his interest as heir was

a mere naked possibility or expectancy, and was in no sense a present or vested interest in her property. No estate of homestead in her lands had then been acquired, as from the time of their marriage up to the date of the contract, Mr. and Mrs. Crum lived upon and occupied a farm belonging to Mr. Crum as their homestead, and did not establish a homestead upon the property of Mrs. Crum until the September following.

Whether the mere naked possibility or expectancy of an heir apparent or presumptive can be made the subject of assignment or release, has been the subject of very grave controversy; but the law now seems to be well settled that such assignment or release, if made *bona fide* and for an adequate consideration, will be enforced in equity, after the death of the ancestor, not indeed as a trust attaching to the estate, but as a right of contract. 2 Story's Eq. Juris. 1040 c. In *Mitchel* v. *Winslow*, 2 Story, 630, Mr. Justice Story, discussing this question, says: "Courts of equity do not, like courts of law, confine themselves to giving effect to assignments of rights and interests which are absolutely fixed and *in esse*. On the contrary, they support assignments, not only of choses in action, but of contingent interests and expectancies, and also of things which have no present, actual or potential existence, but rest in possibility only. In respect to the latter, it is true that the assignment can have no positive operation to transfer, *in presenti*, property in things not *in esse;* but it operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come *in esse;* and it may be enforced as such contract *in rem* in equity." To same effect see *Woodworth* v. *Shorman*, 3 Story, 171.

In *Wright* v. *Wright*, 1 Vesey, Sr. 409, Lord Hardiwick, discussing the grounds upon which an assignment by an heir of his expectancy may be sustained in equity, says: "An assignment always operates by way of agreement or contract, amounting, in consideration of this court, to this, that one agrees with another to transfer and make good that right or interest, which

is made good by way of agreement." So Mr. Spence, in his treatise on Equity Jurisprudence, says: "A naked possibility or expectancy of an heir to his ancestor's estate, or even the anticipated right of a person or next of kin, may be subject to a contract in equity, which will be equivalent to an assignment of the property, if and when it shall fall into possession." 2 Spence's Eq. Juris. 865. See also, *Varick* v. *Edwards*, 1 Hoff. Ch. 382; *Mansell* v. *Lewis*, 4 Hill, 635; *Jackson* v. *Waldron*, 13 Wend. 178; *Hobson* v. *Trevor*, 2 Peere Wms. 191.

This court has repeatedly held that estates in expectancy, though contingent, are proper subjects of contract, and, therefore, that assignments by expectant heirs of their future contingent estates, when made fairly and upon valuable considerations, though inoperative at law, will be enforced in equity as executory agreements to convey. *Parsons* v. *Ely*, 45 Ill. 232; *Bishop* v. *Davenport*, 58 id. 105; *Galbraith* v. *McLain*, 84 id. 379; *Kershaw* v. *Kershaw*, 102 id. 307; *Simpson* v. *Simpson*, 114 id. 603.

There can be no question then that the complainant's contingent interest or expectancy, as the heir of his wife, in her real and personal estate, was a proper subject of contract, and the contract in question having been made upon a valuable consideration, by parties capable of contracting with each other, and, so far as the evidence shows, with entire fairness, it should, as to such contingent interest or expectancy, be enforced according to its terms.

A question, however, is made as to the right of the remaining heirs of Mrs. Crum to enforce said contract for their sole benefit. Those portions of the contract by which the complainant remised, released and relinquished all his right and interest in the lands of his wife, and covenanted that, in the event of his surviving her, he would not sue for or claim any interest therein, run to his wife, "her heirs, executors, administrators, devisees and assigns," and those portions of the contract containing similar provisions in relation to her personal

estate, run to her, "her heirs, executors, administrators and. legatees." There being no will, there are no executors, devisees or legatees, and no question is now raised in which the administrator, as such, has an interest. The controversy is solely between the complainant, who is the surviving husband, and who, but for said contract, would have been one of the heirs of the intestate, and her next of kin who, if there had been no surviving husband, would have been her sole heirs.

The point made seems to be, that whether the contract is to be regarded as having been made with the intestate herself for her own benefit, or with and for the benefit of her heirs, it must be deemed to inure as completely to the benefit of the complainant as of the other heirs at law. It is claimed that if the contract vested property rights in the intestate herself, those rights passed by descent to the complainant in the proportion in which he was entitled by law to inherit her estate, and that if it is to be enforced as a contract running to her heirs generally, he, as one of the heirs, is entitled to its benefits. To this view we are unable to yield our assent. Such interpretation of the contract would render it simply nugatory.

A relinquishment by an heir to his ancestor of the former's expected inheritance is, in its nature, a relinquishment in favor of the other heirs, whether they are mentioned in the instrument by which the relinquishment is made or not, and after the death of the ancestor, such relinquishment will be enforced in their favor. Thus, in *Bishop* v. *Davenport*, 58 Ill. 105, two of several children and heirs expectant executed to their father instruments acknowledging the receipt from him of certain sums of money in full of their shares of his estate, and two others executed receipts for similar sums of money, in which they expressly released all claim to any share of his estate. In none of these instruments was any reference made to the other heirs, nor did they purport to be made for the benefit of the other heirs. It was held that said moneys were not received by way of advancement, but that said instruments

would be enforced as releases by heirs of their expectancies, and on bill by the other heirs for partition, it was held that they were entitled to the entire estate, to the exclusion of those who had executed the releases. So in *Kershaw* v. *Kershaw*, 102 Ill. 307, a father conveyed to one of his sons a tract of land, and inserted in the deed a clause reciting that said conveyance was made to his son and accepted by him as his full and entire share of his father's estate, and although the other heirs were not mentioned in the deed, it was held, in proceedings for partition of the estate after the death of their father, to operate in favor of the other heirs so as to vest in them the entire estate, to the exclusion of the one who by accepting the deed, released his expectancy in said estate.

The true view would seem to be, that a release by an heir of his expectancy, operates, not as a transfer or conveyance to either the ancestor or the other heirs of the estate which would descend to him upon the death of the ancestor, but rather as an extinguishment of his right to take any estate by descent. It obliterates the right to inherit to an extent substantially equivalent to its obliteration by the death of an heir expectant without issue before the death of the ancestor. The other heirs are thereby placed in the same position in which they would have been if such right had never existed, and they therefore inherit the entire estate, not upon the theory of an assignment to them of the estate in expectancy of the heir executing the release, but upon the theory of an extinguishment or obliteration of that estate.

But it is contended that the release in this case, when properly construed, extends only to the complainant's dower and estate of homestead and his other rights which may properly be said to be *ejusdem generis*, and that it therefore does not affect the complainant's estate which upon the death of his wife descended to him as her heir at law. This conclusion is sought to be reached by an application of the rule, that where, in a statute or contract, a specific enumeration of objects or

things is followed by a general expression, such expression will be held to include only such things or objects as are of the same kind as those particularly enumerated. The portion of the contract to which this rule of interpretation is sought to be applied is as follows:

"And the said party of the first part, in consideration of the payments made and to be made for his benefit, as above stated, and in further consideration of the covenants and agreements of the said party of the second part, hereinafter contained, does, by these presents, remise, release and relinquish to the said party of the second part, her heirs, executors, administrators, devisees and assigns, all his right and interest, of every kind and nature whatsoever, and especially his contingent right of dower and homestead, in all lands of which the party of the second part is now seized or of which she may hereafter become seized; and does hereby covenant to and with the said party of the second part, her heirs, executors, administrators, devisees and assigns, that in the event he should survive the said party of the second part, he will not sue for, claim or demand any right of dower or other interest whatsoever in or out of any and all real estate of which the said party of the second part may die seized or to which she may be entitled at the time of her death, either in possession, reversion, remainder or otherwise."

Here the general and comprehensive expression comes first. It is that the party of the first part does "release and relinquish * * * all right and interest of every kind and nature whatsoever, and especially his contingent right of dower and homestead," etc., in the lands of his wife. The larger and more general intent is first stated, and the evidence, both intrinsic and extrinsic, tends to show that it was the intention of the parties to pass the larger rather than the more limited interest. An intent thus expressed will not be defeated or limited by subsequent expressions more restricted in their application. _Binger_ v. _Cann_, 3 Mees. & Wels. 342.

It is also insisted that the decree is erroneous in not award-ing to the complainant his dower in the lands of his deceased wife, as claimed in his amended bill. The theory upon which this claim is based seems to be, that the contract in question did not constitute a release of dower in the mode provided by statute, and that it must therefore be held to be inoperative, so far at least as that estate is concerned. Our statute has abolished the common law estate of tenancy by the curtesy, and has substituted in lieu of it a right of dower, so that now a husband may claim a right of dower in the lands of his deceased wife, such right being of the same nature and in all respects co-extensive with the dower which a widow may claim in the lands of her deceased husband. R. S. 1874, chap. 41, sec. 1.

The 17th section of the statute in relation to conveyances prescribes the mode in which married women may release their dower, and it may be admitted that an attempted release by a married woman in any other mode would be ineffectual to bar her of her right. But the question in this case is not whether Mrs. Crum executed a valid release of her dower in her husband's lands, but whether his release of dower in her lands was such as to bar his assertion of the right. While the statute giving to husbands the right of dower, vested in them a right which had formerly appertained to married women only, and which had always been hedged about and trammeled by rules of law growing out of the legal disabilities of the dowress, we find in the statute no evidence that the General Assembly, in giving the right of dower to married men, intended, in connection with it, to impose upon them any of those disabilities. The right of dower, when vested in a husband, is an estate in lands, inchoate during the lifetime of his wife and consummate afterwards, and so long as the statute has in no way restricted his power to convey it, we see no reason why he may not release the right or bar himself of its

assertion, in any mode to which the ordinary rules of law would give that effect.

In this case the husband executed to his wife, upon a valuable and adequate consideration, an instrument under seal, by which he released his dower, and also covenanted with her and her legal representatives, not to assert said right in case he should survive her. If then it should be held that a release of dower by a husband directly to his wife is, by reason of their relation, ineffectual as a conveyance, there is no reason why his covenant with her and her representatives not to claim or assert dower should not operate by way of estoppel to bar him of the right.

The question whether said contract operated as a release of homestead presents greater difficulties. At the time the contract was executed no estate of homestead in his wife's lands had been acquired by the complainant, as at that time they were, and ever since their marriage had been, living on lands belonging to him. Subsequently they took up their residence upon lands belonging to Mrs. Crum, and acquired a homestead there, and they continued to occupy such homstead down to the time of Mrs. Crum's death.

The fourth section of the statute in relation to homesteads provides that no waiver or conveyance of the estate exempted shall be valid, unless the same is in writing, subscribed by the householder, and his or her wife or husband, if he or she have one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession is abandoned or given pursuant to a conveyance. It is clear that the contract in question can not be construed as a waiver or conveyance of the homestead in the statutory mode.

In *McMahill* v. *McMahill*, 105 Ill. 596, we held that the estate of homestead could not be barred by an ante-nuptial contract to that effect; that while such contract might bar dower, it could not bar the right of homestead. The same rule would seem to apply to a post-nuptial contract in relation

to the homestead, entered into, as in this case, before the right of homestead accrued.

We find no error in the decree so far as it relates to the lands not affected by the complainant's estate of homestead. But we are of the opinion that he is entitled to his homestead, the contract in question not having the effect of releasing or extinguishing that right. His homestead, however, embraces only lots two, ten, eleven and twelve, in block three, in Lurton & Kedzie's addition to Jacksonville, and has nothing whatever to do with the residue of the lands in controversy. The decree therefore will be reversed as to the lots above mentioned, and as to the residue of the lands described in the bill, it will be affirmed, and the cause will be remanded to the Circuit Court for further proceedings, the costs of this appeal to be paid by the appellees.

*Decree reversed in part and in part affirmed.*