LEGGETT *v.* MARTIN.

4-6472                                                                    156 S. W. 2d 71

Opinion delivered November 17, 1941.

*Dene H. Coleman, J. J. McCaleb, Paul K. Holmes, Jr.,* and *Kancaster Hodges,* for appellant.

*Ernest Neill, S. M. Casey* and *Shields M. Goodwin,* for appellee.

HUMPHREYS, J. This suit was brought by appellants, Roy H. Leggett and Nettie Leggett, his wife; Lizzie L. Garner and Emma Buckmaster against appellees, A. C. Martin and Elizabeth Martin, his wife; and Kirk L. Rutherford, an incompetent, all of whom are the nephews and nieces of M. R. Leggett, deceased, except the wives of Roy H. Leggett and A. C. Martin, in the chancery court of Independence county, Arkansas, to cancel and set aside separate written releases executed by each of the appellants to any claim either of them might have in the estate of their uncle, M. R. Leggett, upon his death in consideration of the payment of $1,000 each to Roy H. Leggett and Lizzie L. Garner and $500 to Emma Buckmaster by their uncle in addition to a conveyance by him of 96 acres of land in Independence county to Roy H. Leggett, and 127 acres of land in Independence county to Lizzie L. Garner, and 220 acres of land in Comanche county, Texas, to Emma Buckmaster, and to permit them to participate as equal heirs with appellees in the entire estate of their uncle, treating the lands theretofore conveyed to each of them as advancements only out of their uncle's entire estate.

It was alleged in the complaint that M. R. Leggett died intestate in Independence county, Arkansas, in July, 1939, leaving surviving him as his only heirs at law appellants, Roy H. Leggett, Lizzie L. Garner and Emma Buckmaster and appellees, A. C. Martin and Kirk L. Rutherford. The releases mentioned in the complaint

were attached as Exhibits ''A,'' ''B,'' and ''C'' to the complaint.

It was alleged that the releases should be canceled as clouds upon the titles of appellants in their uncle's estate for the following reasons:

''First: Consideration mentioned in each was in fact never paid; neither of these instruments ever became operative or were intended by M. R. Leggett or any of plaintiffs to be binding upon them.

''Second: That the agreements were made under a mutual mistake of fact, and based upon misrepresentations of fact by M. R. 'Rus' Leggett.

''Third: That said agreements were rescinded, revoked and canceled to all intents and purposes by M. R. 'Rus' Leggett in his lifetime and he released each of the plaintiffs from the provisions thereof.''

It was also alleged that to hold the appellants, or either of them, to the provisions of said written releases would be inequitable, unjust and unconscionable, and that appellants have no remedy at law.

The prayer of the complaint was that Exhibits ''A,'' ''B,'' and ''C'' be canceled and a master in chancery be appointed to determine the extent and value of said alleged advancements properly chargeable to each and that commissioners of the court be appointed to partition the lands belonging to M. R. Leggett, deceased, to the respective interests of each of the parties as finally determined by the court and for dower rights of Nettie Leggett, for costs and all proper relief.

The appellees, A. C. Martin and Elizabeth Martin, his wife, filed a separate answer admitting the facts relative to the death of M. R. Leggett and his next of kin and to the extent of the lands owned by M. R. Leggett at the time of his death. They denied that the written instruments of release should be canceled and that appellants should be allowed to participate in the estate; that it would be inequitable to enforce the releases; that valuable considerations were received by each of the appellants at the time of and after the execution of the releases. They alleged that on December 7, 1931, M. R.

Leggett conveyed to appellant, Roy H. Leggett, the 96 acres referred to in Exhibit "A," and thereafter paid Roy H. Leggett more than $1,000 in money; also, that on December 7, 1931, M. R. Leggett conveyed to appellant, Lizzie L. Garner, 127 acres of land referred to in Exhibit "B" and thereafter paid Lizzie L. Garner $1,000 in money; that on February 7, 1931, M. R. Leggett conveyed 220 acres of land to appellant, Emma Buckmaster, in Comanche county, Texas, referred to in Exhibit "C," and that each of the appellants took possession of and occupied the lands conveyed to them immediately and that said lands, with the money paid, constituted a consideration for the releases by each of them of all expectant rights as heirs at law in the estate of M. R. Leggett.

A separate answer was also filed by Kirk L. Rutherford, a person of unsound mind, by her statutory guardian, George R. Rutherford, averring substantially the same as was averred in the answer of A. C. Martin and Elizabeth Martin and there was a prayer in each of the separate answers to the effect that on account of the releases each of them was entitled to an undivided one-half interest in all the lands of which M. R. Leggett died seized and possessed and prayed that the court render a decree finding that appellants, Roy H. Leggett, Lizzie L. Garner and Emma Buckmaster, were not heirs at law of M. R. Leggett at the time of his death.

The cause was submitted to the court upon the pleadings and the testimony introduced by appellants and appellees from which he found in favor of appellees upon the issues of fact and law and rendered a decree to the effect that A. C. Martin and Kirk L. Rutherford were the only heirs of M. R. Leggett, deceased, at the time of his death and dismissed the complaint of appellants for the want of equity, from which decree is this appeal.

The testimony in the case is voluminous and to set out the testimony of each of the witnesses in substance would greatly extend this opinion, so we have concluded, after a careful reading of the record, for the sake of

brevity, to record our conclusions on the facts and to declare the applicable law thereto.

Appellants' theory is that in the year 1931, M. R. Leggett, now deceased, concluded to divide a certain portion of his large holdings equally among his nephews and nieces and to give the remainder thereof to educational and charitable institutions and pursuant to this plan he advanced each of the appellants certain lands which he owned and certain amounts of money; that he intended at a future date to advance each of the appellees lands and money of equal value, but that for some unknown reason he changed his mind and decided to treat the conveyances of real estate and the promise to pay appellants certain money as advances out of their respective shares in his property; and that pursuant to this plan he treated the releases from appellants as temporary matters only and of no validity and effect.

Appellees' theory is that having reared appellees from their infancy and educated them after the death of his sister who was their mother, his plan was to extinguish or obliterate the anticipated share of each appellant in his estate in order that appellees might inherit from him upon his death all of his remaining property.

We have concluded that the latter was his plan according to the decided weight of the testimony introduced in the case. The language of the release themselves clearly indicates that such was his intention. We quote the following from the latter part of the release executed by Emma Buckmaster on the 3rd day of February, 1931: "And in consideration of a deed to be executed to me by my uncle, M. R. Leggett, for 220 acres of land now occupied by me and my husband in Comanche county, Texas, I agree to, and do hereby release any and all claims that I may have as heir at law of my said uncle, M. R. Leggett, upon his death."

The purport of the language in the other releases is to the same effect. We do not see how, without doing violence to the language used, either of these releases could be construed to be an advancement out of their respective anticipated shares in their uncle's estate upon his death. The great weight of the oral testimony in

the case supports the contention of appellees that the execution of these releases amounted to the extinguishment or obliteration of appellants' anticipated interest in their uncle's estate. In other words, the weight of the oral testimony sustains the clear meaning of the language used in the releases.

Appellants contend, however, that the cash consideration mentioned in each of the releases was never paid. After carefully considering and analyzing the testimony bearing upon this point our conclusion is that every dollar of the money consideration mentioned in the releases was paid to the releasors.

Appellants also contend that the instruments never became operative or were intended by M. R. Leggett to be binding upon appellants. Deeds were executed pursuant to the releases to very valuable lands to the respective appellants and they entered into possession of the several tracts conveyed to each and have remained in possession thereof ever since, for about 10 years, enjoying the benefits, rents and profits therefrom. M. R. Leggett never at any time during his lifetime demanded rents from the property and real estate he conveyed each of them. M. R. Leggett paid about $12,000 for the lands he conveyed to Roy H. Leggett and Lizzie L. Garner and he paid about $6,000 for the land he conveyed to Emma Buckmaster in addition to the cash he paid them. M. R. Leggett lived more than 8 years after these releases were executed to him and no question was ever raised either by him or by the releasors that the instruments were not binding upon all parties. The releases were never returned, but kept by M. R. Leggett with his deeds and other valuable papers. Neither the lands conveyed to appellants by M. R. Leggett nor the money paid to them was ever turned back to him during his lifetime. We think according to the great weight of the testimony the agreements entered into between M. R. Leggett and appellants were never rescinded, revoked or canceled and were never attempted to be rescinded, revoked or canceled in the lifetime of M. R. Leggett.

Appellants contend that the agreements were made under mutual mistake of fact and based upon misrepre-

sentation of fact by M. R. Leggett. There is no testimony in the record tending to show that mutual mistakes were made or that any misrepresentations were made by M. R. Leggett to appellants.

We have concluded that the only question in the case is whether the releases are legally enforceable. The majority rule of law applicable to the facts in the instant case is stated as follows in 18 C. J. 862: ''Except in some jurisdictions where the contrary is held, it is a rule that the release of an expectant heir to an ancestor, in consideration of an advancement or for other valuable consideration, excludes the heir from participation in the ancestor's estate at his death, provided, in case part or all the estate is realty, there is such a writing as to satisfy the statute of frauds, and provided further that the person executing the release was at the time competent to contract, and that the release was not obtained by means of fraud or undue influence.''

Again we find the majority rule stated in the note in 28 A. L. R. 428, in the following language:

''The weight of authority is that an agreement between a prospective heir and his ancestor by which the former promises, in effect, to accept certain property or other valuable consideration then given him by his ancestor as his full share of the latter's estate, and to make no further claim as heir, is freely and fairly entered into, and made in such form (according to some of the cases) as to comply with the Statute of Frauds, is valid and will be enforced in the courts against such heir after the ancestor's death.''

The record reflects according to the weight of the testimony that the releases in the instant case were not obtained by the means of fraud or undue influence and that the releasors were competent to contract and that the instruments were executed in writing so as to comply with the Statute of Fraud.

In other words, the facts in the instant case bring it clearly within the majority rule as expressed in 18 C. J. 862, and in the note in 28 A. L. R. 428.

One of our own cases, *Felton* v. *Brown,* 102 Ark. 658, 145 S. W. 552, is cited as authority for the majority rule

above quoted. The Felton case, *supra,* was based upon the decision of the Supreme Court of Appeals of West Virginia in the case of *Squires* v. *Squires,* 65 W. Va. 611, 64 S. E. 911. The facts in the case of *Squires* v. *Squires, supra,* were in all respects similar to those in the instant case. Many other authorities may be cited in support of the doctrine that releases by expectant heirs in their ancestor's estate are enforceable in equity if supported by a valuable consideration and are free from fraud, but we will content ourselves by referring to the cases of *Crum* v. *O'Rear,* 132 Ill. 443, 24 N. E. 956, and *Brown* v. *Brown,* 139 Ind. 653, 39 N. E. 152.

No error appearing, the decree is affirmed.