**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-41103.

Nelda Huebner LEGGETT, In the Matter of the Estate of Nelda Huebner Leggett, Deceased, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant-Appellee,

v.

Patricia Huebner SCHUETTE, Defendant-Appellant.

Sept. 4, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this tax case, we review a judgment that Patricia Huebner Schuette had a state property interest in property bequeathed to her by her aunt, despite the fact that she had filed a timely disclaimer and never took possession of, or exercised control over, the property. The district court held that a federal tax lien had attached to the property and the disclaimer was ineffective. We reverse.

I.

The relevant facts are not in dispute. In 1995, Schuette owed the Internal Revenue Service ("IRS") nearly $20,000. In May 1995, Schuette's aunt, Nelda Leggett, died testate, leaving one-twentieth

1

of her estate, or $19,500, to Schuette.  In June 1995, executors were appointed for Leggett's estate.  The executors have distributed all of the estate's assets to the beneficiaries, except for Schuette's share.[1]

In August 1995, Schuette filed a disclaimer of all rights and interests in Leggett's estate.  She believes that her disclaimed share should go to her children, Melissa Ann Oakes and Donald Van Schuette II. In September 1995, the estate filed in county court a petition to quiet title and for declaratory judgment. Specifically, the estate requested that the court declare that the IRS has no lien against the estate's property.

The IRS removed the case to federal court.[2]  Because the facts were uncontested, all parties moved for summary judgment.  The IRS asked the court to rule that its lien is valid, and Schuette asked the court to hold that the United States has no interest in the property.  The estate expressed disinterest in this question but requested attorney's fees and costs under TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986) (authorizing the award of fees and

---

[1]In August 1995, the estate sold certain property.  In exchange for the IRS's release of its lien against that property, the estate paid the IRS 1/20 of the proceeds, or $2,515.95.  The IRS credited this money against Schuette's debt and rejected the estate's request for a refund.  Although our opinion makes it evident that the IRS's position was incorrect, neither party challenges these actions on appeal.  We leave the proper resolution of this issue to whatever further proceedings there may be among the parties.

[2]Under 28 U.S.C. § 2410(a)(1), federal district courts have jurisdiction over actions to quiet title to land on which the United States claims to have a lien.  Under 28 U.S.C. § 1444, such actions are removable.

costs in a declaratory action case when "equitable and just").

In August 1996, the district court held in favor of the IRS. Instead of deciding the fees issue, the court *sua sponte* remanded it to the state court. This had the effect of disposing of all claims in the federal case.

II.

A.

The only issue before us is whether the district court correctly interpreted federal and state law in determining whether a federal lien attached to Schuette's share of Leggett's estate. Questions of law resolved on summary judgment are reviewed *de novo.* *See BellSouth Telecomms., Inc. v. Johnson Bros. Corp.,* 106 F.3d 119, 122 (5th Cir.1997).

When a person fails to pay his taxes, all property rights that he has or acquires thereafter immediately and automatically are subject to a federal tax lien, *see* 26 U.S.C. § 6321, that is not subject to any state laws that govern ordinary liens or to any perfection requirements, *see United States v. Security Trust & Sav. Bank,* 340 U.S. 47, 51, 71 S.Ct. 111, 113-14, 95 L.Ed. 53 (1950). Section 6321 is intended to be broad in scope and applies to every interest the taxpayer has in property. *See United States v. National Bank of Commerce,* 472 U.S. 713, 719-20, 105 S.Ct. 2919, 2923-24, 86 L.Ed.2d 565 (1985). The section does not, however, create or define what constitutes a property interest. Instead, state law determines whether a taxpayer has a property interest to which a federal lien may attach. *See id.* at 722-23, 105 S.Ct. at

3

2925-26; *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). Therefore, we must decide whether, under Texas law, Schuette ever had a property interest in Leggett's estate.

B.

1.

Texas probate law contains two provisions that bear on our determination. The Texas Probate Code provides that "when a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate and the donees of such powers...." TEX. PROB.CODE ANN. § 37 (Vernon Supp.1997). This rule prevents any lapse in title, insures that someone always is responsible for property taxes, allows family settlements agreements, *see In re Estate of Hodges,* 725 S.W.2d 265, 267 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.), guarantees that the beneficiaries will receive any income generated by the estate, *see Hurt v. Smith,* 744 S.W.2d 1, 6 (Tex.1987), and prevents a beneficiary from criminal prosecution for using estate property, *see Palmer v. Texas,* 764 S.W.2d 332, 334 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

Texas law also provides for the possibility of a disclaimer or renunciation of an inheritance:

> Any person ... who may be entitled to receive any property as a beneficiary and who intends to effect disclaimer irrevocably ... shall evidence same as herein provided. A disclaimer evidenced as provided herein shall be effective as of the death of decedent and shall relate back for all purposes to the death of the decedent and is not subject to

4

> the claims of any creditor of the disclaimant.  Unless the decedent's will provides otherwise, the property subject to the disclaimer shall pass as if the person disclaiming ... had predeceased the decedent....

TEX. PROB.CODE ANN. § 37A(flush) (Vernon Supp.1997).  A disclaimer must follow a certain form, *see id.* § 37A(a), and is irrevocable, *see id.* § 37A(d).  It must be made within nine months of death, *see id.* § 37A(a), and cannot be made if the disclaimant has used the property, *see id.* § 37A(g).  A disclaimer is distinct from an assignment, which is a gift from an assignor to an assignee of inherited property.  *See id.* § 37B(d).

These provisions are somewhat contradictory.  Section 37 states that the intended beneficiary had a vested property right from the moment of death, while section 37A teaches that the intended beneficiary never had a property interest at all. Determining which provision is real and which is the fiction decides this issue.

2.

There are two plausible ways to view the statutory scheme.  We could regard § 37 as the reality and § 37A as a legal fiction. Under this view, the intended beneficiaries own the estate's property at the moment of death.  If one of them files a valid disclaimer, the property is transferred to other beneficiaries. The legislature, cognizant of the tax consequences of such a transfer, adopted the legal fiction that the intended beneficiary never owned the property.  The IRS urges this view, which we will call the "Transfer Theory."

The second possibility is that § 37A is the reality and § 37

5

is the legal fiction.  Under this theory, property at death goes to the estate of the decedent.  The intended beneficiaries may accept or reject their inheritances.  If one accepts, the law engages in the legal fiction that he owned the property from the moment of death, thus ensuring the continuity of title and responsibility to pay taxes.  Schuette urges this theory, which we will call the "Acceptance-Rejection Theory."

The difference is vital to the outcome of the case.  Under the Transfer Theory, Schuette had a property right in Leggett's estate, so the federal lien attached and prevented her from making a disclaimer.  Under the Acceptance-Rejection Theory, Schuette never had a property right, as she never accepted the inheritance, so there was nothing to which a federal lien could attach.

C.

At common law, a beneficiary of a will had the power to accept or reject a legacy or devise.  The reason was that no person could be made an owner against his consent.  An heir at law, on the other hand, became the owner of the property, irrespective of whether he wanted it.  Presumably, a contrary rule would allow an heir to defeat an entail.

This distinction had two negative effects.  First, it forced heirs to take possession of property they did not want.[3]  Second,

---

[3]There are many situations, in addition to Schuette's, in which a person rationally might prefer not to accept an inheritance.  For example, a person might be offered a plot of real property with several troublesome tenants.  The cost in time and aggravation of dealing with the tenants easily might outweigh the value of the property.

it had unintended tax consequences. A disclaiming beneficiary of a will was not subject to gift tax liability, *see, e.g., Brown v. Routzahn,* 63 F.2d 914, 917 (6th Cir.1933), while a disclaiming heir was subject to tax liability, *see, e.g., Hardenbergh v. Commissioner,* 198 F.2d 63, 66 (8th Cir.1952), *aff'g* 17 T.C. 166, 1951 WL 326 (1951).

The purpose of the disclaimer law is to rectify this common-law anomaly by putting an heir in the same position as a beneficiary of a will. That is, the purpose is to state that no person, whether heir at law or intended beneficiary of a will, can be forced to take inherited property against his will. *See* UNIF. DISCLAIMER OF TRANSFER BY WILL, INTESTACY OR APPOINTMENT ACT § 1 comment, 8A U.L.A. 166, 166-68 (1993). This, of course, is the Acceptance-Rejection Theory.

The Texas courts have adopted this view of § 37A: "This "relation back' doctrine is based on the principle that a bequest or gift is nothing more than an offer which can be accepted or rejected." *Dyer v. Eckols,* 808 S.W.2d 531, 533 (Tex.App.—Houston [14th Dist.] 1991, writ dism'd by agr.). In fact, "acceptance of the inheritance occurs "only if the person making such disclaimer has previously taken possession or exercised dominion and control of such property in the capacity of beneficiary.' " *Id.* at 534 (quoting TEX. PROB.CODE ANN. § 37A(f) (Vernon Supp.1991)).

Because the *Dyer* court adopted the Acceptance-Rejection Theory, it discarded the notion that a disclaimer could be a fraudulent transfer, reasoning that a transfer is impossible unless

the "transferor" had rights in the thing "transferred." Because a disclaimant "never possesses the property," he cannot transfer it. *Id.; accord Simpson v. Penner (In re Simpson )*, 36 F.3d 450, 452-53 (5th Cir.1994) (per curiam) (stating that this is the law in Texas).

This settles the instant dispute. Under Texas law, Schuette had the right to accept Leggett's intended gift by taking possession of it, by exercising control and dominion over it, or by taking no action within the set time. She also had the right to reject Leggett's intended gift by filing a valid disclaimer within nine months. This right of decision was not, itself, a property right under Texas law. Because Schuette rejected the intended gift, she never had a property right. Therefore, the federal lien had nothing to which to attach.

### III.

### A.

Texas's disclaimer statute is based on a uniform act and, therefore, is similar to acts in other states. We recognize that the Second and Ninth Circuits have come to different conclusions from each other, interpreting New York and Arizona law, respectively. *Compare United States v. Comparato,* 22 F.3d 455, 458 (2d Cir.1994) (holding that a disclaimer was rendered ineffective by a federal tax lien) *with Mapes v. United States,* 15 F.3d 138, 141 (9th Cir.1994) (holding that, because of a timely disclaimer, the federal tax lien did not attach). Because New York law is substantially different from Arizona's or Texas's, these cases are

reconcilable.

The Second Circuit, citing *In re Estate of Scrivani,* 116 Misc.2d 204, 455 N.Y.S.2d 505 (N.Y.Sup.Ct.1982), stated that the New York statute "creates a legal fiction that allows distributees to avoid attachment by creditors or the payment of taxes." *Comparato,* 22 F.3d at 457. The view that the disclaimer is a legal fiction is the Transfer Theory and supports the holding that a property right existed before the disclaimer.

In *Scrivani,* the conservator of Julia Molinelli, an incompetent person, sought to renounce Molinelli's inheritance. *See* 116 Misc.2d at 204-05, 455 N.Y.S.2d 505. The problem was that a transfer of a "resource considered available" would have made Molinelli ineligible for Medicaid benefits. N.Y. Soc. Serv. Law § 366(5)(a) (McKinney 1992 & Supp.1997). The court, therefore, was forced to determine whether a renunciation of an inheritance constitutes the transfer of a resource.

At first, the court appeared to follow the Texas view that "[t]he law forces no one to accept a gift." *Scrivani,* 116 Misc.2d at 208, 455 N.Y.S.2d 505. The court, however, then held that the Molinelli had "an inchoate property interest" in the right to accept the inheritance. *Id.* at 209, 455 N.Y.S.2d 505; *cf.* Adam J. Hirsch, *The Problem of the Insolvent Heir,* 74 Cornell L.Rev. 587, 601-03 (1989) (arguing that *Scrivani* is internally contradictory). Therefore, the court reasoned, renouncing the inheritance would constitute the transfer, or rather the waste, of an available

resource.[4]

Because the Comparatos had a property interest in their right to accept the inheritance, the federal tax lien attached to it. Therefore, the Comparatos could not destroy that asset by disclaiming the underlying inheritance. It should be evident, however, that this conclusion derives from the manner in which the New York courts have interpreted that state's disclaimer statute.

As we have explained, Texas law follows the Acceptance-Rejection Theory and does not recognize a property interest in the right to accept a bequest. Our decision today, therefore, is not in conflict with *Comparato.*

### B.

Similarly, the Ninth Circuit's decision in *Mapes* does not actually conflict with *Comparato.* There, the court was construing an Arizona statute that had not (and still has not) been interpreted by its courts. Thus, the Ninth Circuit assumed that Arizona's view of its statutory scheme would follow the majority rule that Texas follows.[5] Thus, it may be presumed that Arizona, unlike New York, follows the Acceptance-Rejection Theory and does not recognize a property interest in the right to accept a bequest.

---

[4]*See Scrivani,* 116 Misc.2d at 209, 455 N.Y.S.2d 505; *see also In re Molloy v. Bane,* 214 A.D.2d 171, 175, 631 N.Y.S.2d 910 (N.Y.App.Div.1995) (stating, under similar facts, that "petitioner's renunciation of a potentially available asset was the functional equivalent of a transfer of an asset").

[5]*See Mapes,* 15 F.3d at 141; *see also* Robert M. Hoffman & Aaron L. Mitchell, *Deceptive Trade Practices and Commercial Torts,* 45 Sw. L.J. 1667, 1710 (stating that Texas follows the majority rule); *cf. Frances Slocum Bank & Trust Co. v. Estate of Martin,* 666 N.E.2d 411, 415 (Ind.Ct.App.1996) (adopting *Dyer* ).

10

The fact that three states have adopted similar statutory schemes does not necessarily mean that the law functions the same way in each state. New York law creates a property interest in an intended beneficiary's right to accept a gift and may follow the Transfer Theory. Arizona and Texas do not. It is one of the complexities (and, ultimately, one of the strengths) of the federal system that different states may interpret similar statutes in very different ways.

## IV.

## A.

We pause to address two of the IRS's arguments for ignoring the plain import of Texas law in determining the existence of a state property right. In *United States v. Irvine,* 511 U.S. 224, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994), the Court held that the disclaimer of a remainder interest in a trust after a reasonable time had passed was a taxable gift, even though the interest was created before the passage of the gift tax. *See id.* at 226, 114 S.Ct. at 1475. The Court's interpretation of the gift tax does not dictate this court's interpretation of § 6321.

Section 6321 adopts the state's definition of property interest. Title 26 U.S.C. § 2511(a), which defines "transfer" and "property" for purposes of the gift tax, does not adopt state law. Instead, it aims to reach "every species of right or interest protected by law and having an exchangeable value." *Jewett v. Commissioner,* 455 U.S. 305, 309, 102 S.Ct. 1082, 1086, 71 L.Ed.2d 170 (1982) (quoting S.REP. NO. 72-665, at 39 (1932); H.R.REP. NO.

11

72-708, at 27 (1932)).

In *dictum,* the Court recognized the conundrum that we face today and the Second and Ninth Circuits have faced in the past:

> Although a state-law right to disclaim with such consequences might be thought to follow from the common-law principle that a gift is a bilateral transaction, requiring not only a donor's intent to give, but also a donee's acceptance, state-law tolerance for delay in disclaiming reflects a less theoretical concern. An important consequence of treating a disclaimer as an *ab initio* defeasance is that the disclaimant's creditors are barred from reaching the disclaimed property. The *ab initio* disclaimer thus operates as a legal fiction obviating a more straightforward rule defeating the claims of a disclaimant's creditors in the property disclaimed.

*Irvine,* 511 U.S. at 239-40, 114 S.Ct. at 1481-82 (citations omitted). The Court recognized that the right to disclaim might, under state law, be based on the Acceptance-Rejection Theory and, therefore, not be a legal fiction. The Court then pointed out that allowing a late disclaimer,[6] on the other hand, can be explained only as a rule aimed at frustrating creditors.

Because the Texas statute does not allow late disclaimers, it is based solely on the Acceptance-Rejection Theory. Thus, treating this rule as a non-fiction, as Texas caselaw requires, is fully consistent with the principles laid down in *Irvine.*

B.

In *United States v. Mitchell,* 403 U.S. 190, 191, 91 S.Ct.

---

[6]In *Irvine,* the disclamation occurred 62 years after the trust's creation. *See* 511 U.S. at 226-27, 114 S.Ct. at 1475. Texas law, by contrast, prohibits a disclaimer filed more than nine months after death. *See* TEX. PROB.CODE. ANN. § 37A(a) (Vernon Supp.1997). It is worth noting that the disclaimer in *Comparato* was filed over seven years after the devisor's death. *See* 22 F.3d at 456.

1763, 1765, 29 L.Ed.2d 406 (1971), Anne Goyne Mitchell, upon divorce, renounced her right to the proceeds of the marital community (and the corresponding obligation to pay the debts of that community).[7] Mitchell argued that, because she had renounced the community income, she was not responsible for the corresponding tax liability. *See id.* at 192, 91 S.Ct. at 1765-66.

The Court noted that tax liability follows ownership and, therefore, if Mitchell ever had ownership of the income, she was liable for the tax. *See id.* at 196-97, 91 S.Ct. at 1767-68. The Court proceeded as we do today, examining the state law in great detail. *See id.* at 197-203, 91 S.Ct. at 1768-71. The Court determined that, under Louisiana law, the wife had a property interest in the community's income from the moment of inception, rather than "a mere expectancy." *Id.* at 199, 91 S.Ct. at 1769 (quoting *Phillips v. Phillips,* 160 La. 813, 107 So. 584, 588 (1926), *overruled by Creech v. Capitol Mack, Inc.,* 287 So.2d 497, 510 (La.1973)).

It should be evident that we have followed the same methodology as did the *Mitchell* Court. Like that Court, we have examined state law to determine whether it creates a property interest. Unlike the statutory scheme considered in *Mitchell,* Texas law did not create a property interest for Schuette in Leggett's estate. Although the IRS correctly argues that *Mitchell*

---

[7]*See* LA. CIV.CODE art. 2410 (1870) ("Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains.").

13

"underscored the supremacy of federal law with respect to the taxation of state created property interests," *Mitchell* does not disturb the principle that a federal tax lien cannot attach in the absence of a state-created property interest.

V.

In closing, we note that Congress easily can expand the IRS's lien power, if it so desires. For example, Congress can follow what it did with § 2511(a), and define property more broadly than state law does. Alternatively, Congress simply can prohibit persons subject to § 6321 from filing disclaimers. We decline the IRS's invitation to rewrite the law ourselves, as that power lies exclusively in the legislative branch. *See Rodriguez v. INS,* 9 F.3d 408, 414 (5th Cir.1993).

REVERSED.