# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3249

_____

|  |  |  |
|---|---|---|
| Drye Family 1995 Trust;<br>Daniel M. Traylor, Trustee, | * | |
| | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee. | * | |
| -------------------------------- | * | |
| United States of America, | * | Appeal from the United States |
| | * | District Court for the |
| Appellee, | * | Eastern District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| Drye Family 1995 Trust; | * | |
| Daniel M. Traylor; Rohn F. Drye; | * | |
| Sue C. Drye, Theresa K. Drye, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:   April 15, 1998

Filed:   August 17, 1998

_____

Before BOWMAN[1], Chief Judge, and McMILLIAN and MURPHY, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

The Drye Family 1995 Trust, Daniel M. Traylor, Rohn F. Drye, Jr., Sue C. Drye, and Theresa K. Drye (collectively, appellants) appeal from a final judgment entered in the United States District Court[2] for the Eastern District of Arkansas in favor of the United States of America (hereinafter, the government) on its counterclaim to reduce certain tax assessments to judgment.  Drye Family 1995 Trust v. United States, No. LR-C-96-346 (E.D. Ark. July 14, 1997) (judgment).  For reversal, appellants contend that the district court erred in failing to hold that a taxpayer's disclaimer under Arkansas law has the legal effect of voiding interests created under Arkansas law such that federal tax liens are incapable of attachment.  For the reasons discussed herein, we affirm.

## Jurisdiction

The district court had jurisdiction over the underlying wrongful levy action pursuant to 26 U.S.C. § 7426, which waives sovereign immunity to allow such suits, and 28 U.S.C. § 1346(e), which grants subject matter jurisdiction over such suits.  The district court also had jurisdiction over the government's counterclaim pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340, 1346(c).  Jurisdiction on appeal is proper

_____

[1]The Honorable Pasco M. Bowman succeeded the Honorable Richard S. Arnold as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

-2-

under 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure.

## Facts

The relevant facts are undisputed. On August 3, 1994, Irma Deliah Drye died intestate at her home in Pulaski County, Arkansas, leaving an estate worth approximately $236,000.00, of which $158,000.00 was personalty and $75,000.00 was realty located in Pulaski County, Arkansas. Ms. Drye was survived by her son and sole heir-at-law, Rohn F. Drye, Jr. (Drye), and his daughter, Theresa K. Drye. On the date of his mother's death, Drye was insolvent and owed the government approximately $325,000.00 representing assessments for tax years 1988, 1989, and 1990. The Internal Revenue Service (IRS) had made assessments against Drye in November 1990 and May 1991 and had valid tax liens against all of Drye's property or rights to property pursuant to 26 U.S.C. §§ 6321 and 6322 of the Internal Revenue Code (the Code).

On August 17, 1994, Drye was appointed the Personal Representative and Administrator of his mother's estate in Pulaski County Probate No. 94-1440. Drye resigned from that position on February 6, 1995. Before resigning, Drye filed in the probate court and the land records of Pulaski County an instrument dated February 4, 1995, entitled "Disclaimer and Consent" to disclaim all interests in his mother's estate.[3] Also, on or about February 4, 1995, Theresa Drye created The Drye Family 1995 Trust (the Trust). Theresa Drye was appointed Successor Personal Representative and Administratrix of Irma Deliah Drye's estate on February 8, 1995.

---

[3]Pursuant to Ark. Code Ann. § 28-2-109(b), Sue C. Drye, Drye's wife, joined in the election of the disclaimer in order to consent to the disclaiming of any dower or homestead interests that she might have had.

On March 10, 1995, the Probate Court found that Drye had effected a valid disclaimer of his mother's estate under Arkansas law and ordered final distribution of the estate to Theresa Drye. Theresa Drye then funded the Trust with her interest in the estate. The Trust's beneficiaries are Theresa Drye and, during their lifetimes, Drye and his wife, Sue C. Drye. Pursuant to the terms of the Trust, distributions are at the discretion of the trustee, Daniel M. Traylor, and may be made only for the health, maintenance, and support of the beneficiaries. The Trust is spendthrift and, therefore, its assets cannot be attached by state law creditors to satisfy the debts of its beneficiaries.

On April 18, 1995, the Trust opened an investment account at Stephens, Inc., an investment banking organization which managed the account in the name of the Trust. Also in 1995, Drye began negotiations with the IRS regarding his tax liabilities during the course of which he revealed his beneficial interest in the Trust. On April 11, 1996, the IRS filed in the office of the Pulaski County, Arkansas, Circuit Clerk and Recorder a Form 668 Notice of Federal Tax Lien against the Trust as Drye's nominee and, subsequently, served a Notice of Levy on Stephens, Inc. and notified the Trust of the levy.

The Trust brought the underlying wrongful levy action on May 1, 1996, alleging that the IRS had unlawfully levied its property to satisfy Drye's federal tax liabilities and seeking, among other things, injunctive relief. On May 2, 1996, Stephens, Inc. paid over to the IRS $134,004.33 representing the account's proceeds. On June 28, 1996, the government filed a counterclaim against the Trust, the trustee, and the trust beneficiaries seeking, among other things, to reduce to judgment the tax assessments against Drye, confirm its right to seize the Trust's assets in collection of those debts, foreclose on its liens and sell the Trust property. The Trust and the government filed

cross-motions for summary judgment.[4]  The district court granted the government's motion for summary judgment, id. at 6 (Feb. 25, 1997), and thereafter denied Drye's motion to reconsider its order.  Id. at 2 (April 4, 1997).

On July 14, 1997, the district court entered final judgment in favor of the government and against the Trust and the counterclaim defendants.  In addition, that judgment (1) dismissed with prejudice the complaint of the Trust and the trustee; (2) reduced to judgment assessments against Drye for $220,980.00, plus statutory interest, for the last quarters of 1988 and 1989 and the first quarter of 1990, and assessments against Drye for $91,952.00, plus statutory additions to tax, for 1988; (3) determined that the government had valid tax liens against all of Drye's property and rights to property including the personalty and realty conveyed in the estate (particularly the funds seized by levy from Stephen's, Inc., and the real property in Pulaski County); (4) determined that Drye's disclaimer was invalid, null, and void, and fraudulent against the United States, and that the Trust was merely Drye's nominee or alter ego; and (5) ordered the foreclosure of the federal tax liens, the sale of the real property, and the application of the sale proceeds and of the funds seized by levy in satisfaction of the assessments against Drye.  Id. at 1-3 (July 14, 1997) (judgment). This appeal followed.

## Discussion

This appeal presents a narrow, but not uncomplicated, legal issue that conjoins state laws of inheritance and federal tax law, and one that has fomented a split among

---

[4]On or about January 17, 1997, the Trust served on the government a motion for summary judgment but inadvertently omitted to file that motion with the district court. The district court later granted the Trust's motion to accept the filing of the motion for summary judgment pursuant to Fed. R. Civ. P. 60(b).

three federal courts of appeal.[5] The issue is whether a taxpayer's disclaimer under state law has the legal effect of voiding state law interests in property such that federal tax liens are incapable of attachment. The law of Arkansas is the applicable state law in the instant case. We review de novo the district court's interpretation and application of both federal and state law. Norwest Bank North Dakota, N.A. v. Doth, No. 97-3113, 1998 WL 432471, at *4 (8th Cir. July 31, 1988) (federal law); Salve Regina College v. Russell, 499 U.S. 231 (1991) (state law); Lindsay Mfg. Co. v. Hartford Accident & Indem. Co., 118 F.3d 1263, 1267 (8th Cir. 1997) (same).

Section 6321 of the Internal Revenue Code creates a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to any person who has neglected or refused to pay any tax (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) after demand has been made. 26 U.S.C. § 6321. "'[S]tate law controls in determining the nature of the legal interest which the taxpayer had in the property.'" Aquilino v. United States, 363 U.S. 509, 513 (1960) (Aquilino) (quoting Morgan v. Commissioner, 309 U.S. 78, 82 (1940)). However, whether a right or interest created under state law "constitutes 'property' or 'rights to property' is a matter of federal law." United States v. National Bank of Commerce, 472 U.S. 713, 727 (1985) (Bank of Commerce) (citing United States v. Bess, 357 U.S. 51, 56-57 (1958) (Bess)). "'[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [§ 6321], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." Bank of Commerce, 472 U.S. at 722 (quoting Bess, 357 U.S. at 56-57); see also United States v. Mitchell, 403 U.S. 190, 197 (1971) (Mitchell) ("[S]tate law creates legal

---

[5]Leggett v. United States, 120 F.3d 592, 598 (5th Cir. 1997) (state law disclaimer of right to accept or reject property defeated attachment of federal tax liens); United States v. Comparato, 22 F.3d 455 (2d Cir. 1994) (state law disclaimer ineffective against federal tax liens); Mapes v. United States, 15 F.3d 138, 140 (9th Cir. 1994) (state law disclaimer defeated attachment of federal tax liens).

interests but the federal statute determines <u>when</u> and how they shall be taxed.")
(emphasis added) (citations omitted); <u>United States v. Solheim</u>, 953 F.2d 379, 382 (8th
Cir. 1992) (<u>Solheim</u>) ("Once the tax lien has attached to the taxpayer's state-created
interest, federal law applies.") (citing <u>Aquilino</u>, 363 U.S. at 513-14)).  This bifurcated
application of state and federal law derives from the fact that the federal statute
"creates no property rights but merely attaches consequences, federally defined, to
rights created under state law."  <u>Bess</u>, 357 U.S. at 55 (holding in bankruptcy context
that state law that "[an] insured's property right represented by the cash surrender value
[of a life insurance policy] is not subject to creditors' liens' was irrelevant" to whether
federal tax lien could attach).

The Code does not define "property" or "rights to property" as those terms are
used in § 6321.  The Supreme Court has held that Congress's language with respect to
those terms "is broad and reveals on its face that Congress meant to reach every
interest in property that a taxpayer might have. . . . 'Stronger language could hardly
have been selected to reveal a purpose to assure the collection of taxes.'" <u>Bank of
Commerce</u>, 472 U.S. at 719-20 (quoting <u>Glass City Bank v. United States</u>, 326 U.S.
265, 267 (1945)) (other citations omitted).  <u>But cf.</u> <u>Leggett v. United States</u>, 120 F.3d
592, 598 (5th Cir. 1997) (<u>Leggett</u>) (suggesting that Congress's failure to define property
more broadly than state law does (as is the case in the gift tax provisions of the Code)
or to expressly prohibit taxpayers from filing disclaimers precludes an expansive
reading of § 6321).  In enforcing § 6321, appellate courts have interpreted "property"
or "rights to property" to mean state-law rights or interests that have pecuniary value
and are transferable.  <u>See, e.g.</u>, <u>United v. Stonehill</u>, 83 F.3d 1156, 1159-60 (9th Cir.)
(<u>Stonehill</u>) (holding that a chose-in-action is "property" or a "right to property" under
§ 6321 in light of its pecuniary value and transferability), <u>cert. denied</u>, 117 S. Ct. 480
(1996); <u>In re Kimura</u>, 969 F.2d 806, 811 (9th Cir. 1992) (<u>Kimura</u>) (holding that liquor
license is subject to § 6321 lien because it has independent value and sufficient
transferability); <u>In re Terwilliger's Catering Plus, Inc.</u>, 911 F.2d 1168, 1171-72 (6th Cir.
1990) (<u>Terwilliger's Catering Plus</u>) (same); <u>21 West Lancaster Corp. v. Main Line</u>

Restaurant, Inc., 790 F.2d 354, 357-58 (3d Cir. 1986) (21 West Lancaster Corp.) (noting that federal tax lien may attach to liquor license because license has value and transferability, notwithstanding fact that, under state law, license is not property or subject to a security interest); Southern Bank v. IRS, 770 F.2d 1001, 1005 (11th Cir. 1985) (Southern Bank) (holding that an equitable right of redemption constitutes "property" or "right to property" under § 6321 because it has pecuniary value and is transferable).

Under Arkansas law the right to inherit has pecuniary value, see, e.g., Bransford v. Jones, 679 S.W.2d 798, 799 (Ark. 1984) (holding that heirs to intestate part of residual portion of estate who were also specific legatees to a bequest had a right to post-judgment interest on intestate share), and is transferable. See Clark v. Rutherford, 298 S.W.2d 327, 330 (Ark. 1957) (upholding conveyance, through assignment, of expectancy in mother's estate); Hutchison v. Sheppard, 279 S.W.2d 33, 38 (Ark. 1955) (recognizing conveyance of an "entire interest" in land irrespective of whether heir had received by will or by intestacy a share in the reversionary estate or whether conveyance preceded decedent's death); Bradley Lumber Co. v. Burbridge, 210 S.W.2d 284, 288 (Ark. 1948) (reasserting that, although unenforceable at law, assignments of expectancies by prospective heirs have generally been upheld in courts of equity); Leggett v. Martin, 156 S.W.2d 71, 74-75 (Ark. 1941) (holding that expectant heirs may release to an ancestor for adequate consideration their anticipated interests in that ancestor's estate); Felton v. Brown, 145 S.W. 552, 554 (Ark. 1912) (same). The Arkansas Probate Code provides that an heir may disclaim, in whole or in part, an intestate interest in or right to a heritable estate within nine months of the decedent's death. Ark. Code Ann. §§ 28-2-101 & 28-2-107(a)(1). The Arkansas Probate Code further provides that a disclaimer effected under these provisions creates the legal fiction that the disclaimant predeceased the decedent and "relates back for all purposes to the date of death of the decedent." Id. § 28-2-108(a)(1) & (3) (emphasis added).

-8-

Appellants contend that, in light of Drye's legally valid disclaimer, Drye never had a property interest in his mother's estate to which federal liens could attach. Specifically, appellants argue that the "relation back" provision in the disclaimer statute has the effect of completely nullifying any state law right to intestate succession that Drye might once have had. Appellants urge this court either to reverse the district court's denial of their motion for summary judgment in favor of the government or to certify to the Arkansas Supreme Court the question of what effect, if any, the "relation back" doctrine has on federal tax liens.

The government maintains that the federal tax liens attached to Drye's interest in his mother's estate on the date of her death and that the subsequent disclaimer was ineffective to remove them. The government further argues that, because Drye's right to intestate succession has pecuniary value and is transferable, it constitutes "property" or "rights to property" under § 6321 and was automatically subject to attachment by the preexisting federal tax liens. In addition, the government argues that the transfer of the estate's assets to the Trust constitutes a fraudulent conveyance because the Trust is Drye's nominee or alter ego.[6]

The Second, Ninth, and Fifth Circuits addressed similar arguments in determining the effect of a state law disclaimer on preexisting federal tax liens and reached differing results. In Leggett, the most recent case, the Fifth Circuit determined that a disclaimer under Texas law nullifies any interest that the disclaimant has in the property, thereby defeating the attachment of federal tax liens. 120 F.3d at 596. As in the instant case, the IRS had made assessments against a taxpayer and acquired a lien against all of her property and rights to property pursuant to § 6321 when her aunt died testate, leaving the taxpayer a one-twentieth interest in her estate. Id. at 593. The taxpayer subsequently disclaimed her entire interest in the estate pursuant to Texas's

_____

[6]The government briefed this issue below but the district court did not reach it.

-9-

disclaimer statute and sought a declaration that the IRS had no lien against the estate's property in view of the disclaimer. Id. The district court ruled in favor of the IRS on the ground that Texas law creates only a right to accept or reject inheritance; that is, the taxpayer merely had a right of decision which does not constitute a property right under state law. Id. at 596. The Fifth Circuit reversed, applying Texas law to determine whether the state-law right constituted "property or rights to property" under § 6321. Id. at 594 ("[S]tate law determines whether a taxpayer has a property interest to which a federal lien may attach. . . . Therefore, we must decide whether, under Texas law, [the taxpayer] ever had a property interest in [the subject] estate.") (citations omitted). Reading the Texas Probate Code's vesting and disclaimer provisions together, the Fifth Circuit concluded that "'a bequest or gift is nothing more than an offer which can be accepted [by taking possession, exercising dominion, or taking no action within the set time] or rejected [by timely filing a disclaimer].'" Id. at 595-96 (citing Texas authority). Furthermore, the Fifth Circuit distinguished its holding from a contrary holding in United States v. Comparato, 22 F.3d 455 (2d Cir. 1994) (Comparato), on the ground that New York law is substantially different from Texas law and from Arizona law, which was applied in Mapes v. United States, 15 F.3d 138, 140 (9th Cir. 1994) (Mapes). Leggett, 120 F.3d at 596-97.

In Mapes, the taxpayer's mother died, leaving him half of her estate. 15 F.3d at 139. In order to prevent preexisting federal tax liens from attaching to his interest in the estate, the taxpayer renounced his interest in favor of his children pursuant to Arizona's Probate Code.[7] Id. at 140. The district court's ruled in favor of the government and against the taxpayer's children in their wrongful levy action. Id. at 141. The Ninth Circuit reversed, holding that "state law, not federal law" determined "whether [the taxpayer] had any interest in property, lienable or not." Id. at 140. From

---

[7]Like the Arkansas Probate Code's disclaimer provisions, the disclaimer provisions of the Arizona Probate Code have not been interpreted in a reported Arizona State Court opinion or federal court opinion.

-10-

this premise, the court concluded that the taxpayer did not have an interest under state law because the effect of the taxpayer's proper and timely renunciation was to prevent him from acquiring any interest to which a federal tax lien could have attached. Id. at 140-41. The court further held that the taxpayer's renunciation was not compromised by his temporary use of part of the estate (a vehicle, constituting one percent of the value of the estate) in order to prevent its loss or theft. Id. at 141.

As noted above, the Second Circuit reached a contrary result in Comparato. Comparato involved the estate of a quadriplegic who died intestate in 1984, leaving his parents, the Comparatos, as his statutory distributees. 22 F.3d at 456. In 1989 Anthony Comparato, the decedent's father, petitioned the Surrogate's Court to approve the settlement of a malpractice action that decedent had commenced before his death and a derivative wrongful death claim, and to distribute the proceeds equally between himself and his wife as the decedent's heirs. Id. In August 1989, before the Surrogate Court disposed of the petition, the IRS served notice of levy on the decedent's estate in the amount of the Comparatos' tax liability. Id. The Comparatos executed separate, untimely renunciations of their respective interests in their son's estate on April 10, 1991, which the Surrogate Court permitted them to file on September 23, 1991. Id. In 1992 the government commenced an action in the district court to reduce to judgment the assessments against the Comparatos. Id. The district court held that the Comparatos acquired property interests in the proceeds of the malpractice claims on the date of their son's death and that the preexisting federal tax liens attached to the interests prior to the Comparatos' renunciation. Id. at 458. The Second Circuit affirmed, holding that, under New York law, the Comparatos' interests vested upon their son's death, thereby obviating any analysis of the retroactive effect of the renunciation. Id. at 457-58. "[O]nce state law provided [the Comparatos] with a vested interest in the proceeds of the malpractice actions, federal law controlled whether their interests were exempt from levy by the United States." Id. at 458 (citing United States v. Rodgers, 461 U.S. 677, 683 (1983)). Applying federal law, the court further determined that the express terms of the Code precluded any determination that

-11-

the Comparatos' interests were exempt from levy by operation of a state law.  Id. (citing 26 U.S.C. § 6334).

We agree with the conclusion reached in Comparato.[8]  The central question undergirding each circuit court's analysis is what law applies:  Is a federal court bound by state law governing disclaimers and the "relation back" thereof or does federal law governing the attachment of liens apply?  Leggett concludes that "state law determines whether a taxpayer has a property interest to which a federal lien may attach."  See Leggett, 120 F.3d at 594.  Similarly, Mapes holds that state law concerning property interests and disclaimers determine whether a taxpayer has "property" or a  "right to property."  Mapes, 15 F.3d at 140.  However, as we noted earlier, the Supreme Court has pronounced that "once it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative," Bess, 357 U.S. at 56-57, and that "[w]hether a state-law right constitutes 'property' or  'rights to property' is a matter of federal law.'"  Bank of Commerce, 472 U.S. at 727 (emphasis added).  The principle that emerges from these seemingly contradictory statements is that state law determines whether a given set of circumstances creates a right or interest; federal law then dictates whether that right or interest constitutes "property" or the "right to property" under § 6321.  The concomitant state law consequences of a state law interest or right "are of no concern to the operation of the federal tax law."  Id. at 723.

---

[8]Comparato appears to be factually distinguishable from the instant case because the Comparatos disclaimed their vested interest in the proceedings approximately seven years after the disclaimer period.  However, the timeliness of the disclaimer did not drive the court's decision in Comparato.  Rather, the court relied mainly on the fact that Congress did not specifically exempt from § 6321 levy property that state law has made exempt from state levy.  See United States v. Comparato, 22 F.3d 455, 458 (2d Cir. 1994).

By extension, we hold that the state law consequences of Drye's right to his mother's estate, namely, the legal fiction that is created through Drye's disclaimer under Ark. Stat. Ann. § 28-2-101 et seq., is "of no concern to the operation of the federal tax law." Cf. Bess, 357 U.S. at 57 ("Such state laws 'are not laws for the United States . . . unless they have been made such by Congress itself.'") (quoting Fink v. O'Neil, 106 U.S. 272, 276 (1882) (concerning bankruptcy liens)); Leggett, 120 F.3d at 596 ("The view that the disclaimer is a legal fiction . . . supports the holding that property right existed before the disclaimer."); Terwilliger's Catering Plus, 911 F.2d at 1171-72 ("Although it is true that the state has the right to decide what property interests it wishes to create, it cannot thwart the operation of the Tax Code by classifying the interests it has created as something other than property rights."). Under this view, we conclude that the preexisting federal tax liens attached to Drye's state law right to his intestate share which vested on or about the time of his mother's death. See, e.g., Keenan v. Peevy, 590 S.W.2d 259, 269-70 (Ark. 1979) (holding that the title to real property vests immediately upon death of owner if heirs take through intestate succession, subject to appropriate provisions for administration under the probate code and subject to widow's dower and homestead rights, if any); Dean v. Brown, 227 S.W.2d 623, 628 (1950) (deciding under prior law that the personalty of an intestate became vested in the personal representative when appointed and remained so vested until distribution upon proper order of the probate court); see also Ark. Stat. Ann. § 28-9-203(c) ("Real estate passes immediately to the heirs upon the death of the intestate . . . . However, personalty will pass to the personal representative, if any, for distribution to the heirs . . . .").

Appellants suggest that Drye cannot be forced to "accept" his share of the estate. Brief of Appellants at 4. We disagree. Although the Arkansas disclaimer statute provides that "an acceptance of the property or interest of a benefit thereunder" constitutes a bar to the right to disclaim property or an interest in property, Ark. Code. Ann. § 28-2-102, (thereby supporting inferentially appellants' argument), we conclude that "acceptance" in this context is a term of art particular to the issue of state law

disclaimer which we have already rejected as irrelevant to our analysis. But see Leggett, 120 F.3d at 595-97; cf. Mapes, 15 F.3d at 141(holding that the taxpayer's use of the estate's property prior to disclaimer was de minimis and thus did not constitute acceptance of benefits from the property). In actuality, if Drye did nothing, he still had an interest in the estate as the sole heir-at-law. Subject to the administration of the estate, that interest is enforceable and transferable upon the death of Irma Deliah Drye and, more important, during the nine-month disclaimer period. Moreover, it is the existence of Drye's right to a share of his mother's estate that allowed him the right under state law to disclaim the estate; in other words, Drye's mere ability to invoke a legal fiction under state law that has the effect of redirecting the succession of the estate reifies his state law interest in the estate. Unfortunately for Drye, our inquiry regarding his rights under state law terminates upon identifying this elementary interest. The "relation back" of Drye's disclaimer is therefore of no effect to our analysis.

As a matter of federal law, Drye's state law right to inherit his mother's estate is a "right to property" under § 6321 because that right has pecuniary value (the estate was valued at approximately $233,000 minus administrative expenses) and is transferable. See, e.g., Stonehill, 83 F.3d at 1159-60; Kimura, 969 F.2d at 810; Terwilliger's Catering Plus, 911 F.2d at 1171-72; 21 West Lancaster Corp., 790 F.2d at 357-58; Southern Bank, 770 F.2d at 1005. In light of the foregoing, we hold that Drye's state law interest in the estate of his mother is subject to the "federal consequence" of the preexisting tax liens, irrespective of Drye's subsequent disclaimer of that interest under state law.

To be sure, there are policy considerations that arguably militate in favor of an opposite result. In Leggett, the Fifth Circuit provided a thoughtful analysis of some of these considerations. At common law, beneficiaries could accept or reject a legacy or devise on the theory that no person can be made an owner without his or her consent; heirs could not. Leggett, 120 F.3d at 595-96. We agree with the Fifth Circuit's conclusion that the purpose of disclaimer law is to rectify the disparate tax treatment

that resulted from this distinction whereby disclaiming beneficiaries were not subject to gift tax liability while disclaiming heirs were. See id. However, under the Fifth Circuit's reasoning, limiting the application of state law disclaimers to state tax liability goes against the spirit and purpose of disclaimer laws. We find, however, that the Supreme Court's instruction that "state-law consequences of [a state-law defined interest] are of no concern to the operation of the federal tax law" and its express limitation of the role of state law in determining federal tax liability under § 6321 counsel against interpreting broadly the scope of state disclaimer laws. State disclaimer statutes may fulfill their intended purpose with respect to state tax liability but cannot affect federal tax consequences.

Furthermore, holding that state law disclaimers can defeat federal tax liability ignores the clear intent of Congress embodied in the broad scope of § 6321. The purpose of § 6321 is to reach any and all interests of pecuniary value to which a taxpayer may be entitled in order to satisfy outstanding tax liability. It follows, therefore, that Congress did not intend that taxpayers have the prerogative to relinquish rights in property in favor of avoiding tax liability. See Bank of Commerce, 472 U.S. at 723-25 (holding that "[c]ommon sense dictates" that taxpayer's unqualified, unrestricted, and absolute right under state law and his bank contract to compel payment of outstanding balances in two accounts constitutes property [or] rights to property under §§ 6331 and 6332); United States v. First Nat'l Bank, 348 F. Supp. 388, 389 (D. Ariz. 1970) ("[I]t is inconceivable that Congress . . . intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer[].") (quoted in Bank of Commerce, 472 U.S. at 726); cf. St. Louis Union Trust Co. v. United States, 617 F.2d 1293, 1302 (8th Cir. 1980) ("The unqualified contractual right to receive property is itself a property right subject to seizure by [§ 6321] levy, even though the right to payment of the installments has not matured at the time of the levy.").

Section 6334 of the Internal Revenue Code also convinces us of Congress's intention to reach property and rights to property disclaimed under state law. Section 6334 specifically exempts certain property or rights to property from the ambit of the Code's levy provisions. 26 U.S.C. § 6334(a). Property or rights to property disclaimed under state law are not included in the list of exempt property. Subsection (c) expressly provides that the list is exhaustive. Id. § 6334(c) ("[N]o property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)."); see also Mitchell, 403 U.S. at 205 (holding that § 6334(c) is specific and clear and provides "no room . . . for automatic exemption of property that happens to be exempt from state levy under state law"); Comparato, 22 F.3d at 458 (relying on exhaustive list of exempt property in § 6334(a) as evidence of Congress's intent not to exempt property taxpayers renounced under state law). Accordingly, Congress's failure to exclude property exempt from levy under state law is indicative of its intention that such property be subject to federal levy. Cf. In re Detlefsen, 610 F.2d 512, 515 (8th Cir. 1979) (Detlefsen) (holding that under § 70(a) of the old Bankruptcy Act, a post-petition state law disclaimer defeated federal liens, but recognizing that the more expansive language anticipated in the new bankruptcy code would obviate this question by expanding the definition of property and thus the scope of federal liens); Stephen E. Parker, Can Debtors Disclaim Inheritances to the Detriment of Their Creditors?, 25 Loy. U. Chi. L.J. 31, 37-39 (1993) (discussing Detlefsen and noting that courts that have reviewed the same issue under the new bankruptcy code "have in fact reached the different result referred to by the Detlefsen court"). Finally, we would be remiss in setting forth our analysis, if we failed to note that Drye's retention of a life estate in the Trust, which was funded in large part if not entirely by the disclaimed property, gives us considerable pause.

Considered in their totality, these factors clearly outweigh, and obviate consideration of, the goal of state disclaimer statutes to equalize the gift tax consequences between intestate and probate heirs. Thus, having determined that Drye's right to his intestate share of his mother's estate is property or a right to

property within the meaning of § 6321 and assuming for purposes of analysis that Drye's disclaimer was properly executed under Arkansas law, we further conclude that the only relevant legal effect of Drye's disclaimer is to direct the proceeds of the estate to his daughter subject to the federal liens. The liens pass <u>cum onere</u> with the estate until they are satisfied or become unenforceable. <u>See</u> 26 U.S.C. § 6322 (unless otherwise provided by law, a lien imposed by § 6321 arises at the time of assessment and continues until the liability for the assessed amount "(or judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time"); <u>cf.</u> <u>Bess</u>, 357 U.S. at 57 (referring to liens under bankruptcy code). The liens are, therefore, enforceable against the Trust and the trust beneficiaries to the extent that they are heretofore unpaid.

**Conclusion**

Peeled to their core, Drye's efforts to bind the IRS by the legal fiction created under Arkansas's disclaimer statute were unfruitful. For the reasons stated in this opinion, we affirm the judgment of the district court granting summary judgment in favor of the government and denying appellants' motion for summary judgment. In light of the foregoing, we do not reach the government's argument that the disclaimer effected a fraudulent conveyance.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-